UNITED STATES, *et al.*, *ex rel.* SUSAN
V. M. MAHARAJ
    *Plaintiffs*

      v.

THE ESTATE OF CHARLES HOWARD
ZIMMERMAN, *et al.*
    *Defendants.*

Civil Action No. ELH-18-2998

## MEMORANDUM OPINION

This *qui tam* action concerns a six-acre parcel of land located in Frederick County, Maryland (the "Land" or the "Disputed Parcel"). Dr. Susan V. M. Maharaj, the Relator, filed suit on behalf of the United States of America and the State of Maryland against the Estate of Charles Howard Zimmerman, Robert Clayton Stevens, and George C. Stevens, pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.,* and Maryland's analogous statute ("MFCA"), Md. Code, §§ 8-101 *et seq.* of the General Provisions Article ("G.P."). ECF 1 (the "Complaint").[1]

The Land separates the Relator's farm from a farm formerly owned by Charles Howard Zimmeran, who died in 2011. It is now the property of Robert and George Stevens. The Relator

---

[1] These statutes permit a private party, a whistleblower known as a relator, to sue on behalf of the government to recover damages from a defendant who has caused fraudulent claims for payment to be submitted against the public fisc. As an incentive to bring such suits, a successful relator is entitled to share in the government's recovery. *See United States ex rel. Bunk & Ammons v. Gov't Logistics N.V.*, 842 F.3d 261, 265 n.3 (4th Cir. 2016); *see also Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 404 (2011); *ACLU v. Holder*, 673 F.3d 245, 246-51 (4th Cir. 2011) (describing history and current provisions of Federal FCA).

In addition to ordinary federal question jurisdiction, *see* 28 U.S.C. § 1331, the FCA contains a specific grant of subject matter jurisdiction. *See* 31 U.S.C. § 3732(a). And, a district court with jurisdiction under the Federal FCA also has jurisdiction as to state-law qui tam claims "aris[ing] from the same transaction or occurrence." *Id.* § 3732(b).

alleges that defendants did not own the Land, but registered it in the Conservation Reserve Enhancement Program ("CREP"), a federal program in which property owners are paid to dedicate agricultural lands for preservation.[2]  In so doing, defendants allegedly defrauded the Farm Service Agency ("FSA") of the United States Department of Agriculture ("USDA") and its Maryland counterpart, the Maryland Farm Service Agency.  According to the Relator, the defendants received "tens of thousands of dollars" from the United States and/or Maryland between 2000 and 2015 by enrolling the Land into the CREP.

The Relator filed her Complaint under seal, along with eighteen exhibits, pursuant to the initial sealing provisions of the FCA and the MFCA, in order to provide time for the United States and Maryland to decide whether they wished to intervene.  *See* 31 U.S.C. § 3730(b)(2); G.P. § 8-104(a)(3)(ii).  Both the United States and the State of Maryland declined to intervene.  *See* ECF 2; ECF 18.  The Seal was lifted (ECF 3), and the Relator has continued to pursue the case.

The Complaint contains four counts.  Count I asserts that defendants presented false claims to obtain payment from the United States, in violation of 31 U.S.C. § 3729(a)(1(A).  In Count II, the Relator alleges a violation of 31 U.S.C. § 3729(a)(1)(B), claiming the knowing presentation of false records to obtain payment.  Count III asserts that defendants used false records to avoid an obligation to pay the United States, in violation of 31 U.S.C. § 3729(a)(I)(G).  And, Count IV alleges that defendants made false statement to obtain payment from Maryland, in violation of G.P. §§ 8-101 *et seq.*

Defendants have moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(5), and 12(b)(6).  ECF 12 (the "Defendants' Motion").  The Defendants' Motion is supported by one

---

[2] The CREP is part of the Conservation Reserve Program, the federal government's private-land conservation program, administered by the Farm Service Agency.  ECF 1 at 4 n.1.

exhibit. ECF 12-1. The Relator opposes Defendants' Motion (ECF 13), and defendants have replied (ECF 14), supported by one exhibit. ECF 14-1. In addition, Maryland has moved to dismiss, without prejudice. ECF 18 (the "State Motion"). Defendants filed a response to the State Motion (ECF 19), and the State replied. ECF 20. However, the Relator did not respond to the State Motion.

No hearing is necessary to resolve the issues. *See* Local Rule 105.6. For the reasons that follow, I shall grant the State Motion (ECF 18) and grant in part and deny in part the Defendants' Motion (ECF 12).

## I.    Factual and Procedural Background[3]

### A.  Factual Background

#### 1.  The Underlying Properties

The Disputed Parcel separates two farms in Frederick County, Maryland. ECF 1, ¶ 11. The "Laughlin Farm" lies to the east. *Id.* ¶ 12. The Relator and her husband, Dr. Erich E. Blatter, purchased the Laughlin Farm in 2001 from Dr. Henry Laughlin and Marion P. Laughlin, who had held the property since 1963. *Id.* ¶¶ 12, 16. The Relator refers to it as the "Blatter/Maharaj Farm." ECF 1, ¶ 14.

To the east lies the "Zimmerman Farm." *Id.* ¶ 13. Beginning in the 1950s, Charles Zimmerman and his wife, Mildred, rented the Zimmerman Farm, which was then a dairy farm, from Ada Devries and Hilda D. Davies. *Id.* ¶ 15. The Zimmermans purchased the property from Hilda D. Davies on or about September 28, 1965. *Id.* ¶ 17. However, according to the Relator,

---

[3] Given the procedural posture of this case, I must assume the truth of all factual allegations in the Complaint. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

the Zimmerman's did not acquire title to the Disputed Parcel. *Id.* The Zimmermans owned the Zimmerman Farm until Mr. Zimmerman's death in 2011. *Id.* ¶ 26. The Zimmerman Farm is presently owned by Robert and George Stevens. *Id.* ¶¶ 28-29.[4]

The parties fiercely contest the ownership of the Land, which has been the subject of extensive litigation in the Maryland courts. Plaintiff asserts that "none of the parties to this action is the record owner" of the Disputed Parcel. *Id.* ¶ 14.

### 2. Allegations Relating to The Estate of Charles Zimmerman

The Zimmermans ceased dairy operations in 1999. *Id.* ¶ 18. Shortly thereafter, Mr. Zimmerman applied to place 37.3 acres of property in the CREP, knowing that he did not own all of the property. *Id.* ¶¶ 10, 19-21. The CREP is a land conservation program administered by FSA. *Id.* ¶ 10 n.1. Farmers participating in the CREP agree to remove environmentally sensitive land from production in exchange for annual payment and other federal and state benefits. *Id.* According to the Relator, the 37.3 acres that Mr. Zimmerman sought to enroll in the CREP included the Disputed Parcel. *See id.* ¶¶ 11, 22.

To that end, Mr. Zimmerman submitted a Conservation Program Worksheet ("CREP Worksheet") on November 27, 2000. *Id.* ¶ 19; *see* ECF 1-3 ("CREP Worksheet"). The same day, the Zimmermans executed a CREP Contract ("CREP Contract"). *Id.* ¶ 20; *see* ECF 1-4 ("11/27/2000 CREP Contract"). In the CREP Contract, the Zimmermans represented that Mr.

---

[4] The Complaint does not explain the relationship between Mr. Zimmerman, Robert Stevens, and George Stevens. The Complaint merely refers to Robert Stevens as the grandson of Charles Zimmerman, ECF 1, ¶ 35, and Personal Representative of his estate. *Id.* ¶ 6. According to the Maryland Court of Appeals, which issued a published opinion in 2018 concerning a quiet title action between the Relator and defendants, George Stevens is the Zimmermans' "foster child," and Robert Stevens is the son of George Stevens. *See Estate of Zimmerman v. Blatter*, 458 Md. 698, 711, 183 A.3d 22, 232 (2018). Given the common surnames, and to avoid confusion, I shall refer to Robert Stevens and George Stevens by their first names.

Zimmerman was the "'100' percent owner, rather than operator, of the 37.3 acres for enrollment, which included the Disputed Land." ECF 1, ¶ 21; *see id.* ¶ 23. In support of the CREP Contract, the Zimmermans provided the Maryland Farm Service Agency with a deed to the Zimmerman Farm. *Id.* ¶ 21.

The CREP Contract began on January 1, 2001, and was renewed annually. *Id.* ¶¶ 20, 24. When Ms. Zimmerman passed away in 2007, Mr. Zimmerman revised the CREP Contract, naming himself as the sole contract participant. *Id.* ¶ 26; *see* ECF 1-5 ("7/11/2007 CREP Contract").

However, according to the Relator, the Zimmermans "were ineligible to place the Disputed Parcel in a CRP Contract." ECF 1, ¶ 22. In order to enter into a CREP Contract, the participant "must be an owner or operator of the eligible land," but Mr. Zimmerman was neither the owner nor the operator of the Disputed Parcel. *Id.* (citing 7 C.F.R. § 1410.5). He did not hold the title to the Disputed Parcel. *Id.* ¶ 17. And, he was not an operator of the Disputed Parcel, because he ceased farming the prior year, and he did not submit any paperwork averring to be an operator of the Land. *Id.* ¶ 23.

Mr. Zimmeran allegedly knew that he did not own the Disputed Parcel. *Id.* ¶ 34. He told family and neighbors that the Disputed Parcel was part of the Laughlin Farm. *Id.* ¶ 35. And, in the 1980s, Mr. Zimmerman allegedly had an argument with Dr. Laughlin about their property boundaries. *Id.* ¶ 36. Dr. Laughlin's son mediated the dispute, which culminated in Mr. Zimmerman and Dr. Laughlin signing a written agreement acknowledging that their property boundaries were contested, but agreeing that both parties could use the Disputed Parcel rent-free. *Id.* Further, the Relator alleges that in the spring of 2002, Mr. Zimmerman admitted to her that she owned the Disputed Parcel. *Id.* ¶ 44. And, in September 2010, he confirmed his lack of ownership over the Disputed Parcel because he had Zimmerman Farm surveyed, and the surveyors

characterized the Disputed Parcel as an "Area of Unknown Ownership." *Id.*; *see* ECF 1-11 ("Easement Survey").

The Relator alleges that she has exercised ownership over the Disputed Parcel since purchasing the Laughlin Farm in 2001. *Id.* ¶ 39. She treated the Land as her property, including mowing and clearing brush and building a stone walkway and patio. *Id.* ¶¶ 42, 43. And, when individuals wanted to use the Disputed Parcel for recreation, they asked Dr. Maharaj for permission, not the Zimmermans. *Id.* ¶¶ 40, 41. Mr. Zimmerman never objected to Dr. Maharaj or third parties using the Disputed Parcel. *Id.* ¶¶ 40, 43.

Mr. Zimmerman passed away on January 29, 2011. *Id.* ¶ 26. Robert, acting as the personal representative of the Estate of Charles Howard Zimmerman (the "Estate"), revised the CREP Contract on August 1, 2011, to name the Estate as the CREP participant. *Id.*; *see* ECF 1-6 ("1/29/2011 CREP Contract"). But, when Robert filed an inventory of the Estate's assets in May 2011, he did not list the Disputed Parcel as Estate property. ECF 1, ¶ 27.

### 3. Allegations Relating to Robert and George Stevens

On April 18, 2012, the Estate conveyed 5.515 acres of the Zimmerman Farm to Robert and Diane Cole Stevens, and William E. Moxley and Joan Moxley, as life tenants; and then to Robert and George as tenants in common. *Id.* ¶ 28; ECF 1-7 ("4/12/2012 Deed"). On January 1, 2013, the Estate conveyed the remaining 162.33 acres of the Zimmerman Farm to Robert and George as joint tenants. ECF 1, ¶ 29; *see* ECF 1-8 ("12/3/2012 Deed"). Robert and George revised the CREP Contract on January 16, 2013, naming themselves as the CREP participants. ECF 1, ¶ 30; ECF 1-9 ("9/0/2015 CRP Contract"). The CREP Contract ended on September 30, 2015. ECF 1, ¶ 20.

The Relator alleges that Robert and George were aware that the Zimmerman Farm did not include the Disputed Parcel. *Id.* ¶ 46. Dr. Maharaj discussed the issue with Robert on May 31,

2011. *Id.* ¶ 47. And, Robert allegedly admitted to Dr. Maharaj's husband in June 2011 that the Disputed Parcel was part of the Laughlin Farm, not the Zimmerman Farm. *Id.* ¶ 48.

### B. Procedural History

#### 1. State Litigation

On June 4, 2014, Robert, on behalf of the Estate, filed a complaint in the Circuit Court for Frederick County against, *inter alia*, the Relator and her husband. He sought to quiet title to the Disputed Parcel on the ground that the Estate had obtained title to the Land through adverse possession. *Id.* ¶ 51; *see* ECF 1-13 ("Circuit Court Complaint").

Judge William R. Nicklas, Jr. conducted a two-day bench trial on September 15-16, 2015. ECF 1, ¶ 54; ECF 1-14 ("Transcript of Proceedings"). As a preliminary matter, Judge Nicklas asked the parties whether the case could proceed without the record title owners of the Disputed Parcel being named as defendants. The Estate contended that, notwithstanding the absence of the record title holder, the court could determine which of the parties had a superior right to possess the Land. ECF 1, ¶ 54. At the conclusion of the trial, Judge Nicklas ruled that the Estate "had met 'the criteria of adverse possession' and that, as between or amongst the Estate and the relator, Dr. Maharaj, and her husband, Erich E. Blatter, the Estate had the right to possess the Disputed Land by adverse possession." *Id.* (quoting ECF-14 at 11). The circuit court entered an order on November 3, 2015, granting the Estate the right to use and possess the Disputed Parcel as against the Relator. *Id.* ¶ 56; ECF 1-15 ("11/2/2015 Order").

The Relator noted an appeal on November 30, 2015. ECF 1, ¶ 57; ECF 1-16 ("Notice of Appeal"). In an unreported opinion, the Maryland Court of Special Appeals vacated the judgment, reasoning that the record owner was a necessary party and therefore must be joined to a quiet title action. ECF 1, ¶ 58; *see Erich E. Blatter, et ux. v. Estate of Charles Howard Zimmerman*, No.

2146, Sept. Term, 2015, 2017 WL 2730237, at *7 (Md. Ct. Spec. App. June 26, 2017).  Thereafter, the Maryland Court of Appeals granted certiorari.  ECF 1, ¶ 58.

In an opinion of April 20, 2018, the Maryland Court of Appeals determined that amendments to the Real Property Article of the Maryland Code and to the Maryland Rules, enacted while the case was pending before the Maryland Court of Special Appeals, had retroactive effect and governed the quiet title action.  *Id.* ¶ 59; *see Estate of Zimmerman v. Blatter*, 458 Md. 698, 706-07, 183 A.3d 223, 228 (2018); *see also* Title 14, Subtitle 6 of the Real Property Article of the Maryland Code, and Maryland Rules 12-801 to 12-811.  Accordingly, the Maryland Court of Appeals concluded "'that, under the circumstances of this case, the proper disposition is to reverse the Court of Special Appeals's judgment and remand this case to that Court with instructions to vacate the circuit court's judgment and remand this case to the circuit court for further proceedings, so that the Estate can follow the procedures that are outlined in the new statutes and Maryland Rules concerning joinder of a defendant who is a deceased record owner with no known personal representative.'"  ECF 1, ¶ 59 (quoting *Estate of Zimmerman*, 458 Md. at 743, 183 A.3d at 250).

Pursuant to this ruling, on May 23, 2018, the Maryland Court of Special Appeals vacated the underlying judgment of the circuit court and remanded the case for further proceedings.  ECF 1, ¶ 60; ECF 1-17 ("5/23/2018 Order").  The Estate filed an amended complaint on June 13, 2018, again seeking to quiet title to the Disputed Parcel and asserting ownership through adverse possession.  ECF 1, ¶ 61; ECF 1-18 ("6/12/2018 Amended State Court Complaint").  The quiet title action is pending in State court.  *See Estate of Zimmerman v. Blatter*, 10-C-14-001668 (Frederick Cty. Cir. Ct.).

2.  Federal Litigation

In July and August 2014, the Relator filed complaints with the FSA regarding the enrollment of the Disputed Parcel in the CREP.  ECF 1, ¶ 32.  At the time, she also disclosed information to the FSA regarding defendants' receipt of allegedly improper payments.  *Id.* Pursuant to the Freedom of Information Act ("FOIA"), in December 2014, Dr. Maharaj requested the results of the FSA's investigation into her complaint.  *Id.*; *see* ECF 1-10 ("FOIA Response"). The FOIA Response reflected that the FSA decided against pursuing legal action against defendants.  ECF 1, ¶ 32.

The Relator filed her Complaint under seal on behalf of the United States and Maryland on September 28, 2018.  ECF 1.  The United States filed a notice declining to intervene in the suit on February 25, 2019.  ECF 2.  The Complaint was unsealed by Order of April 15, 2019, which was docketed the following day.  ECF 3.

Summons were issued on April 22, 2019.  ECF 4.  On July 23, 2019, summons were returned executed, reflecting that the Relator served the Estate, Robert, and George on July 16, 2019.  ECF 9; ECF 10; ECF 11.

As noted, defendants moved to dismiss the Complaint.  ECF 12.  Relator timely responded (ECF 13), and defendants replied.  ECF 14.  On October 30, 2018, Maryland filed a notice declining to intervene, and moving to dismiss, without prejudice, under the Maryland FCA.  ECF 18.  Defendants filed a response on November 11, 2019.  They assert that, as to the Relator, the Maryland FCA claims should be dismissed with prejudice but, as to the State, they should be dismissed without prejudice.  ECF 19.  The State filed a reply on December 3, 2019, seeking dismissal without prejudice.  ECF 20.

## II.    Standards of Review

### A.  Rule 12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction.  *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'"  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192.  On the other hand, in a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction."  *Id.*  In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014); *Evans*, 166 F.3d at 647.

Defendants raise an as-applied challenge to the Court's subject matter jurisdiction, asserting that this Court should abstain from exercising jurisdiction under the doctrine of *Colorado River* abstention.  ECF 12 at 2; *see Colo. River Water Conservation Dist. v. United States*, 424

U.S. 800 (1976). Therefore, the Court may consider evidence outside the pleadings in addressing the merits of this argument, without converting the proceedings to one for summary judgment.

**B. Rule 12(b)(6)**

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting

the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A*

*Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015).

In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights

asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As noted, the Complaint is supported by eighteen exhibits. ECF 1-1 to ECF 1-18. These exhibits are expressly referenced in the Complaint, and defendants do not challenge their authenticity. Accordingly, I may consider these documents at this stage. The exhibit appended to the Defendants' Motion is titled "First (1st) Set of Interrogatories With Answers of the Defendant Dr. Erich E. Blatter." ECF 12-1. And, defendants submitted an exhibit along with their Reply, titled "Defendants Erich E. Blatter's And Susan V. M. Maharaj's Preliminary Opposition To The Estate of Charles Howard Zimmerman's Motion For Entry of Judgment;[] Request For Hearing." ECF 14-1. Neither document is referenced in the Complaint. Nor is it clear that either is in the public domain. Thus, I shall not consider these exhibits in resolving the motions.

### III.  The State Motion

The State has moved to dismiss Count IV, which asserts a claim under Maryland's False Claims Act, because it has declined to intervene in the Relator's suit, and Maryland law does not permit a relator to pursue an action under the MFCA where the State declines to participate. ECF 18.

The Maryland FCA mirrors the Federal FCA in many respects. Like its federal equivalent, the MFCA imposes liability for, *inter alia*, "knowingly" presenting or causing to be presented, "a false or fraudulent claim for payment or approval" from a State or county entity. G.P. § 8-102(b)(1). And, as with the FCA, the MFCA permits a private person to bring a civil action on behalf of the government for violations of the law. *Id.* § 8-104(a)(1).

When a person brings a *qui tam* action under the MFCA, she must serve a copy of the complaint on the State. *Id.* § 8-104(a)(3)(i). The complaint shall remain under seal "for at least 60 days," during which time the State may consider whether to intervene. *Id.* § 8-104(a)(3)(ii)1-3. If the State elects to intervene, "the governmental entity shall have the primary responsibility for proceeding with the action and may not be bound by any act of the person who initiated the action[.]" *Id.* § 8-104(b)(1)(i). However, and unlike the FCA, the MFCA provides: "If the governmental entity does not elect to intervene and proceed with the action . . . before unsealing the complaint, the court shall dismiss the action." *Id.* § 8-104(a)(7). And, if the State joins the suit but later decides to withdraw as a party to the action, "the court shall dismiss the action." *Id.* § 8-104(b)(3)(ii)2.

In the State Motion, the State contends that it was not served with a copy of the Complaint when it was filed, as required by § 8-104(a)(3), but rather on August 26, 2019, nearly eleven months after the Relator filed her Complaint. ECF 18 at 2. In addition, the State notified the Court

that it would not intervene in the Relator's suit. *Id.* Consequently, the State "requests that the Court dismiss without prejudice all claims brought on behalf of the State of Maryland. *Id.* (citing § 8-104(a)(7)). Relator did not respond to the State Motion.

The language of G.P. § 8-104(a)(7) is clear: A private person cannot pursue a *qui tam* action under the Maryland False Claim Act where the State declines to participate. As noted, defendants responded to the State Motion, urging the Court to dismiss Count IV *with prejudice* as to the Relator. ECF 19. As the State points out, however, the Relator does not possess any independent cause of action under the MFCA. Rather, she pursues the State's claims on the State's behalf. ECF 20. The State has elected not to pursue any claims against defendants. And, the Court has not considered the merits of the MFCA claim. Therefore, I agree with the State that dismissal of Count IV with prejudice would be improper. Accordingly, I shall dismiss Count IV, without prejudice.

## IV. The Defendants' Motion

Defendants have moved to dismiss the Relator's FCA claims on four grounds. They contend that the Court should refrain from exercising jurisdiction over the case, pending the resolution of the quiet title action in State court, on the basis of *Colorado River* abstention. ECF 12 at 2-22; *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ("Colorado River"). Defendants also maintain that the Relator's suit warrants dismissal because she did not serve defendants within the time allowed by Fed. R. Civ. P. 4(m). ECF 12 at 22-23. And, defendants contend that the Relator's FCA claims are foreclosed by the statute's public disclosure bar and by the statute of limitations. ECF 12 at 24-31. The Relator counters that none of these arguments provides a basis to dismiss the Complaint. ECF 13.

## A. *Colorado River* Abstention

According to defendants, this Court should dismiss or stay this case, pending the resolution of the quiet title action in State court, on the basis of *Colorado River* abstention.

"'[A] federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'" *Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Sprint Comm., Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)); *see Mata v. Lynch*, ___ U.S. ___, ___, 135 S. Ct. 2150, 2156 (2015); *England v. La. State Bd. of Med. Exam'rs*, 375 U.S. 411, 415 (1964) ("'When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction.'" (citation omitted)); *accord Wash. Gas Light Co. v. Prince George's Cty. Council*, 711 F.3d 412, 418 (4th Cir. 2013). Nonetheless, the Supreme Court has recognized several carefully delineated categories of cases where a federal court may abstain from deciding a case properly before it. *See New Orleans Pub. Serv. Inc. v. Cty. Council of New Orleans*, 491 U.S. 350, 359 (1989).

Pursuant to *Colorado River*, 424 U.S. 800, a district court may stay a case when faced with parallel federal and state proceedings for purposes of "wise judicial administration." *Id.* at 818; *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). However, "'[a]bdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'" *Colo. River*, 424 U.S. at 814 (quoting *Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)). Stated otherwise, "a court must apply *Colorado River* abstention 'parsimoniously.'" *vonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017) (quoting *Chase Brexton Health Servs., Inc. v. Maryland*, 411 F.3d 457, 463 (4th Cir. 2005)). Indeed, "[t]he rule is well recognized that the pendency of an action in the state

court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *vonRosenberg*, 849 F.3d at 167 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)); *see Colo. River*, 424 U.S. at 817.

A *Colorado River* analysis proceeds in two steps. *See vonRosenberg*, 849 F.3d at 168; *Gannett Co., Inc. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002); *EEOC v. Phase 2 Invs., Inc.*, 333 F. Supp. 3d 505, 514 (D. Md. 2018). First, the court must determine whether the federal and state actions are "parallel." *vonRosenberg*, 849 F.3d at 168; *see Chase Brexton*, 411 F.3d at 464 (the existence of parallel federal and state suits is a "threshold question in deciding whether *Colorado River* abstention is appropriate"). "State and federal suits are parallel only 'if substantially the same parties litigate substantially the same issues in different forums.'" *vonRosenberg*, 849 F.3d at 168 (quoting *New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.*, 946 F.2d 1072, 1073 (4th Cir. 1991)).

"Overlapping legal theories and factual allegations are not enough." *Phase 2 Invs.*, 333 F. Supp. 3d at 514; *see vonRosenberg*, 849 F.3d at 168 (noting the Fourth Circuit has "'strictly construed the requirement of parallel federal and state suits'" (quoting *Chase Brexton*, 411 F.3d at 464)). The parties in both actions must be "almost identical." *Chase Brexton*, 411 F.3d at 464. And, the claims raised in the federal and state actions cannot differ in scope or involve different remedies. *See vonRosenberg*, 849 F.3d at 168 (citing *Chase Brexton*, 411 F.3d at 464; *New Beckley*, 946 F.2d at 1074). Rather, the suits are parallel only where "'the parallel state-court litigation will be an adequate vehicle for the *complete* and prompt resolution of the issues between the parties.'" *vonRosenberg*, 849 F.3d at 168 (quoting *Moses H. Cone*, 460 U.S. at 28) (emphasis in *vonRosenberg*). "If there is any serious doubt that the state action would resolve all of the

claims, 'it would be a serious abuse of discretion' to abstain.'" *vonRosenberg*, 849 F.3d at 168 (quoting *Moses H. Cone*, 460 U.S. at 28).

Where the suits are parallel, the court must then weigh six factors to determine whether extraordinary circumstances exist such that abstention is appropriate. *vonRosenberg*, 849 F.3d at 168. Those factors are, *id.* (quoting *Chase Brexton*, 411 F.3d at 464):

> (1) whether the subject matter of the litigation involves property where the first court may assume in rem jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

"A court must look at these factors holistically[.]" *vonRosenberg*, 849 F.3d at 168; *see Chase Brexton*, 411 F.3d at 464 (cautioning that the analysis "is not a 'hard-and-fast' one in which application of a 'checklist' dictates the outcome"). However, in performing this balancing, the court must remain mindful that the scale is "heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16.

The suits here are certainly related, but they are not parallel. The parties in the two suits are substantially the same. Both cases involve Dr. Maharaj and the Estate. And, the United States is not a party in either case. *See United States ex rel Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) (holding that the United States "is a 'party' to a privately filed FCA action only if it intervenes"); *United States v. Whyte*, 918 F 3d 339, 346-50 (4th Cir. 2019). To be sure, Robert and George, defendants in this action, were not parties in the quiet title action as of the time of briefing of Defendants' Motion. *See* ECF 1-18. But, they are interested parties in the State lawsuit, and Robert is a litigant in that action in his capacity as the personal representative of the Estate. *See Estate of Zimmerman v. Blatter*, 10-C-14-001668 (Frederick Cty. Cir. Ct.).

However, the two suits raise distinct legal issues. Although the resolution of the State case could dictate the outcome of the FCA case, the claims lodged in each suit are night and day. In this case, the Relator asserts that defendants violated federal and state false claims acts by receiving payment for enrolling the Disputed Parcel in the CREP, despite knowing that they did not own the land. ECF 1. In the State proceeding, the Estate alleges that, under State property law, it obtained ownership of the Disputed Parcel no later than 1999, through adverse possession. ECF 1-18. The remedies sought in each suit also differ. The Relator seeks money damages in this case, whereas the Estate seeks a declaratory judgment in the State action.

Defendants contend that the actions are parallel because if the Estate prevails in the quiet title case, then Mr. Zimmerman's enrollment of the Disputed Parcel will not have been fraudulent, thus resolving this case. ECF 12 at 7; ECF 14 at 1. That may be so. But, should the State court find that the Estate failed to establish ownership of the Disputed Parcel by 1999, it will not affect the Relator's claims before this Court. That dooms defendants' argument because suits are not parallel merely because one outcome in the State action—but not others—would resolve the federal case. *See Moses H. Cone*, 460 U.S. at 28 (admonishing that *Colorado River* abstention is inappropriate "[i]f there is any substantial doubt" that the state court action is "an adequate vehicle for the complete and prompt resolution of the issues").

Defendants urge this Court to follow *United States ex rel. Hartigan v. Palubo Brothers*, 797 F. Supp. 624 (N.D. Ill. 1992). But, defendants' reliance on that case is misplaced. There, the plaintiff filed a *qui tam* suit under the FCA against a plethora of individuals and entities involved in the construction industry. The defendants moved to dismiss, arguing, *inter alia*, that *Colorado River* warranted a stay of the case. *Id.* at 633. The court agreed. *Id.* at 635. Relevant here, the court found that the state and federal suits were parallel because in both actions, plaintiffs sought

to recover damages against the same defendants for the same false statements and misrepresentations. *Id.* at 634. Here, however, the federal action is not the mirror image of the State suit. There are no allegations of fraud in the State suit, nor does the federal suit concern who is the proper owner of the Disputed Parcel under Maryland law. *See Concilio De Salud Integral De Loiza, Inc. v. J.C. Remodeling, Inc.*, No. 14-1821 (PAD), 2016 WL 3746522, at *2 (D.P.R. July 8, 2016) (declining to apply *Burford* abstention to FCA case where state action concerned breach of contract claims).

In sum, because the State and federal actions are not sufficiently parallel, *Colorado River* does not apply to the instant action.[5] Accordingly, I shall deny defendants' request to dismiss or stay this action based on *Colorado River*.

## B. FCA Claims

Defendants contend that the Relator failed to state plausible claims under the FCA for two reasons. First, they argue that the Relator's claims are foreclosed by the FCA's public disclosure bar. ECF 12 at 24-27. Second, they posit that her claims are barred by the FCA's statute of limitations. ECF 12 at 28-29. I shall address each contention, in turn.

### 1. Public Disclosure Bar

The FCA protects the government fisc by "impos[ing] civil liability on persons who knowingly submit false claims for goods and services to the United States." *United States ex rel. Beauchamp v. Academi Training Ctr.*, 816 F.3d 37, 39 (4th Cir. 2016); *see United States ex rel. Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 700 (4th Cir. 2014), *cert. denied*, 574 U.S. 819 (2014). In order to stop fraud that might otherwise evade detection and supplement government

---

[5] Because this case fails to meet the threshold requirement, I need not balance the *Colorado River* factors.

enforcement, the FCA permits private individuals, *i.e.*, relators, to file civil lawsuits on behalf of the government against those who defraud the federal government. *Id.* To encourage such suits, the statute allows the relator to collect a portion of the recovery as a reward. *See* 31 U.S.C. § 3730(b).

But, a *qui tam* suit is of no help to the government if the alleged fraud has already been uncovered. *Graham Cty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 294-95 (2010). Thus, since enacting the FCA in 1863, Congress has repeatedly amended the statute in an effort "to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits' in which a relator, instead of plowing new ground, attempts to free-ride by merely reiterating previously disclosed fraudulent acts.'" *Beauchamp*, 816 F.3d at 39 (quoting *Graham Cty. Soil & Water*, 559 U.S. at 295).

One such mechanism is the FCA's public disclosure bar. *See* 31 U.S.C. § 3730(e)(4)(A) (1986), amended by Patient Protection & Affordable Care Act, Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02 (2010); *see also State Farm Fire & Cas. Co. v. United States ex rel. Rigsby*, ___ U.S. ___, 137 S. Ct. 436, 440 (2016) (describing the public disclosure bar as a threshold that a relator must clear in order to proceed on a *qui tam* suit). That provision "disqualifies private suits based on fraud already disclosed in particular settings—such as hearings, government reports, or news reports—unless the relator meets the definition of an 'original source' under the FCA." *Beauchamp*, 816 F.3d at 39 (quoting 31 U.S.C. § 3730(e)(4)); *see United States ex rel. Siller v. Becton Dickenson & Co.*, 21 F.3d 1339, 1347 (4th Cir. 1994).

This case implicates two versions of the public disclosure bar, which Congress amended in 2010. That is so because the FCA does not have retroactive force and therefore may not be applied to cases arising before the effective date of the amendments. *Graham Cty. Soil & Water*,

559 U.S. 283 n.1; *United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 918 (4th Cir.

2013).

Prior to 2010, the statute provided:

No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

31 U.S.C. § 3730(e)(4)(A) (1986). Notably, the pre-2010 version of the statute "operated as a

jurisdictional limitation—the public-disclosure bar, if applicable, divested the district court of

subject-matter jurisdiction over the action." *May*, 737 F.3d at 916; *see Beauchamp*, 816 F.3d at

39.

In 2010, Congress amended the public disclosure bar as part of the Patient Protection and

Affordable Care Act. *See* Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02 (2010).

Effective March 23, 2010, the operative public disclosure provision states, 31 U.S.C.

§ 3730(e)(4)(A) (2010):

The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—

(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(ii) in a congressional, Government[] Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

The "original source" definition was also amended to include an individual who

either:

(i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

*Id.* § 3730(e)(4)(B).[6]

These amendments "significantly changed the scope of the public-disclosure bar." *May*, 737 F.3d at 917. Notably, unlike the pre-2010 public disclosure bar, the current provision is not jurisdictional. Instead, it operates as, "effectively, an affirmative defense." *Beauchamp*, 816 F.3d at 40; *see May*, 737 F.3d at 916. The amendment also "changed the required connection between the [relator's] claims and the public disclosure." *Beauchamp*, 816 F.3d at 40. Whereas the public disclosure bar previously foreclosed claims only when the relator's suit was based on the public disclosure, the current provision "'no longer requires actual knowledge of the public disclosure, but instead applies if substantially the same allegations or transactions were publicly disclosed.'" *Beauchamp*, 816 F.3d at 40 (quoting *May*, 737 F.3d at 917).

Despite these differences, both versions of the statute require the court to ask three questions: (1) is there a qualifying public disclosure? (2) if yes, is the disclosed information the basis of the relator's suit? (3) and, if so, is the relator the original source of that information? *See United States ex rel. Wilson v. Graham Cty. Soil & Water Conservation Dist.*, 528 F.3d 292, 308 (4th Cir. 2008), *rev'd on other grounds*, 559 U.S. 280 (2010); *United States ex rel. Moore v. Cardinal Fin. Co., L.P.*, CCB-12-1824, 2017 WL 1165952, at *10 (D. Md. Mar. 28, 2017); *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 569, 579 (E.D. Va. 2011). This applies on a claim-by-claim basis. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 476 (2007).

---

[6] The number sequence (*i.e.*, (i) then (2)) appears in the statute.

Without distinguishing between the pre- and post-2010 versions of the FCA, defendants assert that the Relator's claims are barred because the factual allegations underlying her suit were publicly disclosed and she is not the original source of those disclosures. ECF 12 at 24. Specifically, defendants argue that the Relator's claims are revealed in documents the FSA generated in response to the Relator's FOIA request (ECF 10-1, the "FOIA Response"). ECF 12 at 25. And, they contend that she is not the original source of her claims "since she bases her action on deeds recorded in land records." *Id.* at 26.

In response, the Relator argues that the public disclosure bar is inapposite because a FOIA response is not a "public disclosure" within the meaning of § 3730(e)(4)(A). ECF 13 at 25-28. Further, the Relator posits that the FOIA Response did not disclose any allegations of fraud, *id.* at 28-29, and she is the original source of the information contained in the FOIA Response. *Id.* at 29-30.

As a preliminary matter, neither party addresses which version of the public disclosure bar governs this case. ECF 12 at 24-27; ECF 13 at 19-30. To my knowledge, the Fourth Circuit has not instructed which statute applies when the alleged conduct straddles the pre- and post-amendment effective date, but the suit is filed after the effective date of the amendment. *See Beauchamp*, 816 F.3d at 39-40 (recognizing that "[t]wo versions of the public-disclosure bar are relevant to this appeal given the timeframe of the alleged underlying fraud," but declining to address the issue because the statutes compelled the same result); *Citynet, LLC on behalf of the United States v. Frontier W.Va., Inc.*, No. 2:14-15947, 2018 WL 1582527, at *15 (S.D. W. Va. Mar. 30, 2018) (observing that this is an open question in the Fourth Circuit). *But see United States ex rel. Palmieri v. Alpharma, Inc.*, 647 F. App'x 166, 166 (4th Cir. 2016) (per curiam)

(quoting *May*, 737 F.3d 908, for the proposition that the post-2010 amendments "'may not be applied to cases arising before the effective date of the amendments'").

Despite the absence of controlling authority, the Supreme Court's decision in *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939 (1997), is instructive. In that case, the relator filed suit under the FCA in 1989, alleging that Hughes Aircraft had mischarged the United States for work it performed pursuant to military contracts. *Id.* at 943. Notably, Congress amended the FCA's public disclosure bar in 1986. *Id.* at 946. Prior to the amendments, a relator's suit was barred if her allegations were already in the government's possession. *Id.* At the Supreme Court the defendant argued that "[b]ecause the 1986 amendment became effective before this suit was commenced . . . [the 1986 statute], rather than the 1982 *qui tam* provision, controls." *Id.* at 946.

The Court rejected this argument. It reasoned that the "'presumption against retroactive legislation . . . is deeply rooted in our jurisprudence'" and applies "unless Congress has clearly manifested its intent to the contrary." *Id.* at 946 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994)). Indeed, "[t]he 'principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal.'" *Id.* (citation omitted). Thus, because the text of the 1986 amendment did not evince congressional intent that it have retroactive effect, the Court "presume[d] it w[ould] not apply to the conduct alleged in this case, which occurred prior to the effective date." *Id.*

Here, the Relator alleges fraud spanning the period of 2001 to 2015. In keeping with *Hughes*, I shall apply the pre-2010 version of the public disclosure bar to any alleged conduct that occurred before March 23, 2010, and the post-2010 version to the conduct alleged to have occurred after that date. Notably, the court of appeals to address this issue have reached the same conclusion. *See United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 841 F.3d

927, 933, n.1 (11th Cir. 2016); *United States ex rel. Bloedow v. Planned Parenthood of the Great Nw. Inc*, 654 F. App'x 335, n.1 (9th Cir. 2016) (mem. opinion); *United States ex rel Gage v. Davis S.R. Aviation, LLC.*, 658 F. App'x 194, 197, n.1 (5th Cir. 2016) (per curiam); *Cause of Action v. Chicago Transit Auth.*, 815 F.3d 267, 271 n.5 (7th Cir. 2016); *United States ex rel. Antoon v. Cleveland Clinic Found.*, 788 F.3d 605, 614–15 (6th Cir. 2015); *United States ex rel. Judd v. Quest Diagnostics Inc.*, 638 F. App'x 162, 165 (3d Cir. 2015).

As a threshold matter, the bar does not apply unless the fraud alleged by the relator was disclosed to the public in a source enumerated in the statute. *See United States v. Meridian Senior Living, LLC*, 5:16-CV-410-BO, 2018 WL 1463347, at *8 (E.D.N.C. Mar. 23, 2018); *Davis*, 753 F. Supp. 2d at 579. A "report" issued by a federal agency is one such source under both the pre-2010 and post-2010 provisions. In interpreting the pre-2010 version of the public disclosure bar, the Supreme Court stated: "A written agency response to a FOIA request falls within the ordinary meaning of 'report.'" *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 410 (2011). Therefore, a FOIA response is a "report[] within the meaning of the public disclosure bar." *Id.* at 411. This remains the case under the post-2010 version of statute, which did nothing to call *Schindler* into question. *See United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 302 (3d Cir. 2016) (applying *Schindler* to post-2010 bar); *United States ex rel. Coyne v. Amgen, Inc.*, 229 F. Supp. 3d 159, 170 (E.D.N.Y. 2017). Accordingly, the FOIA response is a statutorily enumerated source that can trigger the public disclosure bar.

However, having found a qualifying public disclosure does end the inquiry. For the bar to apply, the relator's claims must be "based upon" the public disclosures (for conduct before 2010), or "substantially the same" as the disclosures (for post-2010 conduct). *See United States ex rel.*

*Fadlalla v. DynCorp Int'l LLC*, PX-15-1806, 2019 WL 4221476, at *8 (D. Md. Sept. 5, 2019) (conducting distinct analyses for pre-2010 and post-2010 conduct).

The Relator's claims are not "based upon" information disclosed in the FOIA Response (ECF 10-1). With respect to the pre-2010 bar, the Fourth Circuit has adopted a narrow construction of the phrase "based upon." *See May*, 811 F.3d at 639. According to the Court, a FCA claim is "based upon" a public disclosure and thus triggers the bar "'only where the relator has actually derived from [a public] disclosure the allegation upon which his qui tam action is based.'" *Id.* at 640 (brackets in *May*) (quoting *Siller*, 21 F.3d at 1348); *see also United States ex rel. Ahumada v. NISH*, 756 F.3d 268, 274-75 (4th Cir. 2014). Notably, a relator's claim is barred if it is "'even partly derived from prior public disclosures." *May*, 811 F.3d at 640 (quoting *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 351 (4th Cir. 2009)). However, a claim is not "derived from" the public disclosure where the relator "had independent knowledge of the facts and did not derive his allegations from the public disclosure itself." *Wilson*, 528 F.3d at 308; *see Rostholder*, 745 F.3d at 699; *Davis*, 753 F. Supp. 2d at 582.

That is precisely the case here. The Relator prompted the FSA's investigation by filing a "Hotline Complaint" in which she accused defendants of having unlawfully enrolled the Disputed Parcel in the CREP. In her complaint, dated August 8, 2014, the Relator stated: "I am writing to report on criminal activity regarding a CREP contract that involves defrauding MD state and federal government agencies and taxpayers—over a 10 year period!" ECF 1-10 at 51. And, she averred: "Zimmerman/Stevens . . . enrolled a 6-acre parcel of land in the CREP Program in 2001—that is not in their deed" and that "[t]hey submitted for, and received payment on this 6-acre parcel for 10 years." *Id.* Further, the Relator supplied the FSA with documents supporting her contentions, including letters from Dr. Laughlin and Dr. Blatter asserting that defendants did not

own the Land. *Id.* at 53-58. Thus, the Relator did not derive her fraud allegations from the FSA. Therefore, the pre-2010 public disclosure bar does not divest the Court of jurisdiction over the Relator's FCA claims.

To my knowledge, the Fourth Circuit has not yet construed the "substantially the same" language in the post-2010 public disclosure bar. But, courts within the Fourth Circuit have held that "[a] public disclosure and the instant claims are substantially the same if the earlier disclosure puts the Government on notice of wrongdoing such that the Government could have started an investigation." *United States ex rel, Vitale v. MiMedx Grp., Inc.*, 381 F. Supp. 3d. 647, 657 (D.S.C. 2019); *see Fadlalla*, 2019 WL 4221476, at *10; *Citynet*, 2018 WL 1582527, at *20 (collecting cases from other circuits construing the post-2010 bar). The FOIA Response discloses the Relator's Hotline Complaint, the letters she submitted to the FSA, defendants' CREP contracts, and numerous emails between the Relator and FSA employees, in which the Relator maintains that defendants have defrauded the United States and Maryland. *See generally* ECF 10-1. In light of these materials, even a quick skim of the FOIA Response would alert a government investigator of the fraud presently alleged. It follows that the FOIA Response constitutes a public disclosure under the post-2010 statute.

Nonetheless, the Relator may pursue FCA claims against defendants for their post-2010 conduct because she is the "original source" of the fraud allegations revealed by the FOIA Response. Under the post-2010 version of the public disclosure bar, a relator may proceed if she "voluntarily disclosed to the Government the information" underlying the fraud claims or if she had "independent" knowledge of information that "materially adds to the publicly disclosed allegations" and she voluntarily provided it to the Government before the suit was filed. 31 U.S.C. § 3730(e)(4)(B) (2010). A "'relator's knowledge is direct if he acquired it through his own efforts,

without an intervening agency, and it is independent if the knowledge is not dependent on public disclosure.'" *Ahumada*, 756 F.3d at 276 (quoting *Grayson v. Adv. Mgmt. Tech., Inc*., 221 F.3d 580, 583 (4th Cir. 2000)). And, "[a] relator 'materially adds' to the public disclosures 'when it contributes information . . . that adds in a significant way to the essential factual background: the who, what, when, where and how of the events at issue.'" *Fadlalla*, 2019 WL 4221476, at *11 (quoting *Blue Fisheries*, 812 F.3d at 307).

The Relator has sufficiently pleaded that she is an original source under the post-2010 public disclosure bar. In her Complaint, the Relator alleges that she contacted the FSA in July and August 2014, concerning defendants' allegedly unlawful receipt of payment for enrolling the Disputed Parcel in the CREP. ECF 1, ¶ 32. Further, she assisted the FSA's investigation by supplying the agency with documents tending to show that defendants did not own the Land. *Id.*; *see* ECF 1-10 at 53-58. Thus, the Relator had independent knowledge of defendants' alleged fraud, and she shared this information with the government before filing her *qui tam* suit. Consequently, she is an original source of the fraud claims that underpin this action.

Accordingly, because the FOIA Response did not trigger either the pre-2010 or post-2010 public disclosure rule, I shall deny defendants' motion to dismiss on this ground.

### 2. Statute of Limitations

The FCA contains two limitations periods that apply to *qui tam* suits brought by a private person. 31 U.S.C. § 3731(b); s*ee Cochise Consultancy, Inc. v. United States ex rel. Hunt*, ___ U.S. ___, 139 S. Ct. 1507, 1510 (2019). The penitent provision states, 31 U.S.C. § 3731(b):

> (b) A civil action under section 3730 may not be brought--
>
> > (1) more than 6 years after the date on which the violation of section 3729 is committed, or
> >
> > (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the

United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,

whichever occurs last.

Both limitations periods apply to a relator's action even if the United States declines to intervene. *Cochise Consultancy*, 139 S. Ct. at 1510. To my knowledge, the Fourth Circuit has not clarified what constitutes a "violation" for the purposes of § 3731(b). But, the rule in most jurisdictions is that the clock begins to run when a false claim is submitted, not when payment is received. *See Fadlalla*, 2019 WL 4221476, at *19 (collecting cases).

According to defendants, the six-year statute of limitations period applies to the Relator's claims because she did not file her *qui tam* action within three years of filing her Hotline Complaint with the FSA. ECF 12 at 29. Therefore, defendants posit that the Relator cannot pursue any alleged violations that occurred before September 28, 2012. ECF 12 at 28. The Relator does not contest defendants' math. ECF 13 at 31-32. Instead, she submits that, "[a]t this early stage in the litigation . . . it would be inappropriate to cabin her claims from September 28, 2012, to the present when fraud preceded these dates." *Id.* at 32.

Whether the statute of limitations bars a suit is an affirmative defense, "and the burden of establishing the affirmative defense rests on defendant." *Goodman*, 494 F.3d at 464. At the motion to dismiss stage, a court may dismiss an action on limitations grounds "'only if the time bar is apparent on the face of the complaint.'" *Semenova*, 845 F.3d at 567 (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)); *see Goodman*, 494 F.3d at 464.

This case is plainly governed by the FCA's six-year limitations period. As the Complaint makes clear, the Relator communicated to the FSA her belief that defendants were engaged in fraud to the FSA in 2014. ECF 1, ¶ 32. However, she did not file her Complaint until September 28, 2018. ECF 1. Consequently, § 3731(b)(2) is inapplicable, and the Relator's only basis for

asserting that her claims were timely filed is to proceed under the six-year limitation period in § 3731(b)(1).

Applying § 3731(b)(1) here, the Relator's suit is time-barred to the extent that she seeks to pursue violations of the FCA that occurred before September 28, 2012. Therefore, I shall dismiss Counts I, II, and III, to the extent they allege violations of the FCA committed before that date.

### C. Service of Process

Defendants claim that Dr. Maharaj failed to serve them within 90 days after the complaint was unsealed, as required by Fed. R. Civ. P. 4(m). ECF 12 at 22. Further, they assert that the Relator cannot show good cause for her failure to effect service in a timely manner. *Id.* at 23; ECF 14 at 7-8. Therefore, they contend that the Court must dismiss the suit under Fed. R. Civ. P. 12(b)(5). ECF 12 at 23.

Rule 12(b)(5) provides that a motion to dismiss may be based on "insufficiency of service of process." Service of process is governed by Rule 4. As relevant here, Rule 4(m) requires a plaintiff to serve a defendant "within 90 days after the complaint is filed." If a defendant is not served within that time, "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* Under Rule 4(m), "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

Rule 4(m) applies to FCA cases. *See Am. Civil Liberties Union*, 673 F.3d at 251; *Moore*, 2017 WL 1165952, at *6. However, because such cases initially are filed under seal, the 90-day clock does not start until the court unseals the complaint and orders service. *See* 31 U.S.C. § 3730(b)(3) ("The defendant shall not be required to respond to any complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to

Rule 4 of the Federal Rules of Civil Procedure.").

Courts in this circuit have long debated whether a showing of "good cause" is a condition precedent for extending the deadline for service under Rule 4(m). The rule was enacted in 1993 as a successor to former Rule 4(j), which required that a case "'shall be dismissed'" if the defendant was not served within 120 days and the plaintiff "'cannot show good cause why such service was not made within that period.'" *Chen v. Mayor & City Council of Balt.*, 292 F.R.D. 288, 292 n.6 (D. Md. 2013) (quoting Fed. R. Civ. P. 4(j) (1988)), *aff'd*, 546 F. App'x 187, 188 (4th Cir. Nov. 12, 2013) (per curiam), *cert. granted*, 35 S. Ct. 475 (2014), *cert. dismissed*, 135 S. Ct. 939 (2015), *reh'g denied*, 135 S. Ct. 1485 (2015). Effective December 1, 2015, the time for service was reduced to 90 days.

In *Mendez v. Elliott,* 45 F.3d 75, 78 (4th Cir. 1995), the Fourth Circuit opined that the new Rule 4(m) represented a "renumber[ing]" of former Rule 4(j), "without a change in substance," and requires that if the complaint is not served within the time provided, "the complaint must be dismissed absent a showing of good cause." *Id.* at 78. The *Mendez* Court did not discuss the Advisory Committee Notes to Rule 4(m), which state that the rule "authorizes the court to relieve a plaintiff of the consequences of an application of this subdivision *even if there is no good cause shown.*'" *Hammad v. Tate Access Floors, Inc.*, 31 F. Supp. 2d 524, 527 (D. Md. 1999), *abrogated by Chen*, 292 F.R.D. 288 (quoting Advisory Committee Notes) (emphasis altered).

Subsequent to *Mendez*, the Supreme Court decided *Henderson v. United States*, 517 U.S. 654 (1996). In dicta, the Supreme Court stated that under Rule 4(m) "courts have been accorded discretion to enlarge the [service] period even if there is no good cause shown.'" *Id.* at 662 (quoting Advisory Committee Notes to Rule 4(m)); *see also Henderson,* 517 U.S. at 658 n.5.

Several decisions in this district have observed that it is unclear whether Rule 4(m) vests a

court with discretion to grant an extension of the service deadline, in the absence of good cause. *See, e.g.*, *Lehner v. CVS Pharmacy*, RWT-08-1170, 2010 WL 610755, at *2 (D. Md. Feb. 17, 2010); *Knott v. Atlantic Bingo Supply, Inc.*, JFM-05-1747, 2005 WL 3593743 (D. Md. Dec. 22, 2005); *Hoffman v. Balt. Police Dep't*, 379 F. Supp. 2d 778, 786 (D. Md. 2005); *Melton v. Tyco Valves & Controls, Inc.*, 211 F.R.D. 288 (D. Md. 2002); *Hammad,* 31 F. Supp. 2d at 526; *United States v. Britt*, 170 F.R.D. 8 (D. Md. 1996).

Some regard *Mendez* as binding circuit precedent, *see, e.g.*, *Britt*, 170 F.R.D. at 9, while others have concluded that "*Mendez* is no longer good law." *Hammad*, 31 F. Supp. 2d at 527; *see also Melton*, 211 F.R.D. at 289-90. Others have found it unnecessary to resolve definitively whether a finding of good cause is mandatory before an extension can be granted. *See, e.g.*, *Lehner*, 2010 WL 610755, at *2; *Knott*, 2005 WL 3593743, at *1 n.1. Nevertheless, even if good cause is no longer an absolute requirement under Rule 4(m), "the Court would still need to have some reasoned basis to exercise its discretion and excuse the untimely service: the Court must give some import to the rule." *Hoffman*, 379 F. Supp. 2d at 786; *see also Lehner*, 2010 WL 610755, at *3 (observing that where plaintiff "made no effort to serve Defendant within the time allotted under Fed. R. Civ. P. 4(m)," even assuming that the court had discretion to excuse untimely filing, the court would "not make a mockery of the time requirements set forth in the Federal Rules of Civil Procedure").

In *Chen*, 546 F. App'x 187, the Fourth Circuit upheld the lower court decision that relied on *Mendez*, but it did so without analysis. Thereafter, the Supreme Court granted certiorari in *Chen* to decide "[w]hether, under Federal Rule of Civil Procedure 4(m), a district court has discretion to extend the time for service of process absent a showing of good cause, as the Second, Third, Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits have held, or whether the district court

lacks such discretion, as the Fourth Circuit has held[.]" *Chen v. Mayor & City Council of Balt.*, 135 S. Ct. 475 (2014); *accord Escalante v. Tobar Construction*, PX-18- 980, 2019 WL 109369, at *1n.1 (D. Md. Jan. 3, 2019). However, the Supreme Court later dismissed the petition because the self-represented petitioner missed a briefing deadline. *Chen v. Mayor & City Council of Balt.*, 135 S. Ct. 939 (2015), *petition for reh'g denied*, 135 S. Ct. 1485 (2015).

Notably, most of the circuits that have considered the issue have decided that good cause need not be shown. *See Zapata v. City of N.Y.*, 502 F.3d 192, 196 (2d Cir. 2007); *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1133 (11th Cir. 2005); *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003); *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340 (7th Cir. 1996); *Adams v. Allied Signal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996); *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996); *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995); *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995). The other circuits have not "squarely decided" to the contrary. *Escalante*, 2019 WL 109369, at *3 n.2.

Additionally, "the 2015 amendment appears to clarify []Rule [4(m)] in a manner supporting court discretion to extend the time for service even absent good cause." *Escalante*, 2019 WL 109369, at *3. Judge Xinis explained in *Escalante*, *id.* at *3:

> The 2015 version [of Rule 4(m)] states that if a plaintiff fails to serve the complaint within 90 days, the court must dismiss or "order that service be made within a specified time." Fed. R. Civ. P. 4(m) (2015). However, where good cause is shown, the rule expressly provides only one option to the Court: extend time for service. *Id.* ("*But* if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.") (emphasis added). The amendment, therefore, states even more clearly than in 1993 that a district court has two options where no good cause is shown—dismiss or extend time for service—whereas upon a good cause showing, the court may only extend time, and not dismiss.

As a consequence of the 2015 amendments, several judges in the Fourth Circuit have concluded that *Mendez* no longer controls. *Id.* at *4; *see Robertson v. Beacon Sales Acquisition*,

GJH-16-3241, 2018 WL 2464455, at *3 n.7 (D. Md. May 31, 2018) ("*Mendez* is no longer the controlling authority in the Fourth Circuit because, contrary to former Rule 4(j), Rule 4(m) no longer requires a court to dismiss a complaint absent a showing of good cause."); *Robinson v. G D C, Inc.*, 193 F. Supp. 3d 577, 582-84 (E.D. Va. 2016); *LHF Prods., Inc. v. Does*, No. 3:16-cv-284, 2016 WL 7423094, at *6 n.11 (E.D. Va. Dec. 22, 2016).

Here, by Order of April 15, 2019, I directed that the Complaint be unsealed. ECF 3. The Order was docketed on April 16, 2019, and the Complaint was unsealed that day. *See* Docket. Accordingly, pursuant to Fed. R. Civ. P. 4(m), the Relator was required to serve defendants by July 15, 2019. But, the Relator did not serve defendants until July 16, 2019, one day after the Rule 4(m) deadline. *See* ECF 9; ECF 10; ECF 11. At no point did the Relator seek an extension of the deadline before the end of the 90-day period. *See* Docket.

The Relator does not attempt to establish good cause for failing to make timely service. ECF 13 at 17-18. Instead, she argues that this case should be allowed to proceed because she was only one day tardy in serving defendants. *Id.* at 17. She points out that courts in this District have excused far longer delays. *Id.* (citing *Whetstone v. Mayor & City Council of Balt.*, 18-738-ELH, 2019 WL 1200555 (D. Md. Mar. 13, 2019); *Escalante*, 2019 WL 109369). And, she maintains that defendants are not prejudiced by this one-day delay given that defendants were served well within the 120 days allowed under the 2015 version of the rule. *Id.* at 18.

In response, defendants argue that the Relator has not provided a sufficient basis to extend the service deadline. ECF 14 at 9-14. According to defendants, *Escalante* and *Whetsone* are distinguishable. The plaintiffs in those cases "'did something' within the time period toward accomplishing service," supplying the court with a "reasoned basis to excuse untimely service." *Id.* at 13. In contrast, "Dr. Maharaj made no effort to accomplish service," and therefore "the Court

[is] without a reasoned basis to excuse [her] failure to make any effort to any to attain timely service." *Id.* Further, defendants assert that the Court can assume the delay prejudiced defendants because service occurred both after the expiration of the statute of limitations and Rule 4(m). *Id.* at 14 (citing *Zapata*, 502 F.3d 192).

To be sure, "the plain requirements for the means of effecting service of process may not be ignored." *Armo, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). And, the Relator cannot show good cause for her delay. *See Moore*, 2017 WL 1165952, at *7 ("Inadvertence or neglect of counsel is not 'good cause.'"). But, "[w]hen the process gives the defendant actual notice of the pendency of the action, the rules, in general, are entitled to a liberal construction." *Id.* In my view, under the present circumstances, it is appropriate to extend the time for service through July 16, 2019, the date when defendants received the summons.

First, although the Relator does not meet the good cause standard, there is a reasonable basis to extend the service deadline. The Complaint was unsealed on April 16, 2019, but the Clerk delayed issuing the summons until April 22, 2019. *See* Docket; ECF 13 at 18 n.8. As a result, Relator could not serve defendants for six of the ninety days. This militates against dismissal of the suit on the basis of a technicality.

Furthermore, plaintiff missed the Rule 4(m) deadline by only one day. This is a de minimis delay. Indeed, it is far shorter than the 34 days that the court overlooked in *Escalante*, 2019 WL 109369, *5, or the 63 days that were excused in *Whetstone*, 2019 WL 1200555, at *5-8. Given that service was a mere one day late and the litigation is in its infancy, defendants cannot credibly complain that extending the service period would cause prejudice. *See Mason v. Lewis Contracting Servs., LLC*, No. 3:18CV00095, 2019 WL 2395492, at *2 (W.D. Va. June 6, 2019) (exercising discretion to extend service period one day); *Hong v. Recreation Equip., Inc.*, CV-18-

08519 DDP (SSx), 2019 WL 2124529, at *1 (May 15, 2019) ("[Defendant] appears to have suffered no prejudice from the one day delay in service, and this Court therefore declines to dismiss Plaintiff's claims . . . for failure to timely serve."); *Allah v. Mercy*, CV-18-01457-PHX-DWL, 2018 WL 5807070, at *2 (D. Ariz. Nov. 6, 2018) (observing that plaintiff's conduct "border[ed] on reckless," but nonetheless denying motion to dismiss where service was a day late); *McGee v. S-Bay Dev., LLC*, 8:11-cv-1091-T-27TGW, 2011 WL 13142503, at *2 (M.D. Fla. Oct. 3, 2011) (extending service deadline by one day).

Therefore, the Court, in its discretion, shall extend the Rule 4(m) deadline and permit the case to proceed.

## V.    Conclusion

For the foregoing reasons, I shall grant the State Motion (ECF 18) and grant in part and deny in part the Defendants' Motion (ECF 12).    An Order follows, consistent with this Memorandum Opinion.

Date: December 12, 2019                         _____/s/_____
                                                Ellen L. Hollander
                                                United States District Judge