<u>IN THE UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF MARYLAND</u>

UNITED STATES *ex rel.*                      \*
   SUSAN V. M. MAHARAJ,
                               \*

      Relator,
                               \*

v.
                               \*              **Case No.: DLB-18-2998**

ESTATE OF CHARLES HOWARD
   ZIMMERMAN, *et al.*,
                               \*

      Defendants.
                               \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

<u>MEMORANDUM OPINION</u>

In this *qui tam* action, relator Dr. Susan Maharaj filed suit against her neighbors, Robert Clayton Stevens and George C. Stevens, and the former owner of their property, the Estate of Charles Howard Zimmerman, asserting that they fraudulently claimed ownership of six acres of land located between her farm and their farm and received federal funds in connection with that land even though they do not own it.  She filed this *qui tam* action against them on behalf of the United States and Maryland, seeking to recover the funds the defendants allegedly fraudulently obtained from the government by falsely claiming they owned land that Dr. Maharaj claims belongs to her.  Pending is defendants' motion for judgment on the pleadings, ECF No. 26, which the parties fully briefed, ECF Nos. 35, 37, as well as the relator's motion for leave to file an amended complaint, ECF No. 42, which the parties also fully briefed, ECF Nos. 44, 45.  A hearing is not necessary.  *See* Loc. R. 105.6.  Because the proposed amended complaint contains sufficient allegations to survive defendants' motion as to Counts I and II but not Counts III and IV, the Court will grant Dr. Maharaj's motion in part and deny it in part, and grant defendants' motion for judgment in part and deny it in part.

## I.      Background

On November 7, 2000, farm owner Charles Zimmerman enrolled 37.3 acres of what he asserted was his property in Frederick County, Maryland in the Conservation Reserve Enhancement Program ("CREP"), a federal land conservation program through which private farmers and ranchers receive annual rent and other incentives from the government in exchange for preserving land.[1]   Am. Compl. ¶ 10 & n.1, ¶ 19, ECF No. 42-1.   The same day, Zimmerman signed a United States Department of Agriculture Conservation Reserve Program contract ("CRP Contract"), claiming ownership of all 37.3 acres.  Compl. ¶¶ 20–21 & Ex. D, ECF No. 1–4.  The CRP Contract ran from January 1, 2001 to September 30, 2015.  Compl. ¶ 20.   After Mr. Zimmerman passed away in 2011, Robert Stevens served as personal representative for the Estate of Charles Howard Zimmerman (the "Estate").  Id. ¶ 7.  In that capacity, he revised the CRP Contract on August 1, 2011 to list the Estate as the participant and he continued to enroll the property in CREP.  Am. Compl. ¶¶ 10, 13, 20, 26.  "Participant" is defined in the document as "the undersigned owners, operators, or tenants."  Am. Compl. Ex. F, ECF No. 1-6.  On April 18, 2012, the Estate conveyed 5.515 acres of the property that had been Zimmerman's to Robert and George Stevens as tenants in common, reserving a life estate for "Robert Stevens and Diane Cole Stevens, husband and wife; and William E. Moxley and Joan Moxley, husband and wife."  Id. ¶ 28.  The Estate conveyed the remaining 162.33 acres of Zimmerman's  property to Robert and George

---

[1]      CREP is a part of the Conservation Reserve Program (CRP), the United States' largest private-land conservation program.  Administered by the Farm Service Agency, CREP targets high-priority conservation concerns identified by a State, and federal funds are supplemented with non-federal funds to address those concerns.   In exchange for removing environmentally sensitive land from production and establishing permanent resource conserving plant species, farmers and ranchers are paid an annual rental rate along with other federal and state incentives as applicable per each CREP agreement.

Am. Compl. ¶ 10.

Stevens as joint tenants on January 1, 2013. *Id.* ¶ 29. Robert and George Stevens revised the contract again on January 16, 2013 to list themselves as participants and continued to enroll the property in CREP.[2] Am Compl. ¶¶ 10, 13, 29, 30 & Ex. I, ECF No. 1-9 (Jan. 16, 2013 CRP Contract).

Their neighbor to the west, Dr. Susan Maharaj, claims ownership of six of the enrolled acres that border her and her husband's farm. *Id.* ¶¶ 11–12. On September 28, 2018, she filed this *qui tam* action on behalf of the United States and Maryland, alleging that defendants Robert and George Stevens and the Estate of Charles Howard Zimmerman violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, and the Maryland False Claims Act ("MFCA"), Md. Code, Gen. Prov. §§ 8-101 *et seq.* by applying for and receiving government funds for the disputed land through CREP.[3] Compl., ECF No. 1. Her original complaint included four counts: knowingly presenting or causing presentment of a false or fraudulent claim for payment to the United States in violation of 31 U.S.C. § 3729(a)(1)(A) (Count I), knowingly making or using a false or fraudulent record "to get the false or fraudulent claims paid or approved by the Government" in violation of 31 U.S.C. § 3729(a)(1)(B) (Count II), knowingly causing a false record or false statement to be made or used to avoid an obligation to refund money to the United States in

---

[2] Robert Stevens "is the foster grandson of the late Charles Zimmerman, and the son of George C. Stevens." Am. Compl. ¶ 7.

[3] Pursuant to the FCA and the MFCA, a private party can file suit "on behalf of the government to recover damages from a defendant who has caused fraudulent claims for payment to be submitted against the public fisc." *United States ex rel. Maharaj v. Estate of Zimmerman*, 427 F. Supp. 3d 625, 633 n.1 (D. Md. 2019) (citing *United States ex rel. Bunk & Ammons v. Gov't Logistics N.V.*, 842 F.3d 261, 265 n.3 (4th Cir. 2016); *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 404 (2011); *ACLU v. Holder*, 673 F.3d 245, 246-51 (4th Cir. 2011)). To encourage private parties, who are called "relators," to bring *qui tam* actions, the statutes provide that "a successful relator is entitled to share in the government's recovery." *Maharaj*, 427 F. Supp. 3d at 633 n.1.

violation of 31 U.S.C. § 3729(a)(1)(G) (Count III), and presenting or causing presentment of a false claim for payment to Maryland in violation of Gen. Prov. §§ 8-101 *et seq.* (Count IV). Compl. ¶¶ 65, 69, 73, 77.

The United States and Maryland declined to intervene in this action. U.S. Notice, ECF No. 2; Md. Mot., ECF No. 18. Maryland moved to dismiss the MFCA claim because "[t]he Maryland False Claims Act does not allow a relator to pursue an action in which the State has declined to intervene." Md. Mot.; *see also* Md. Code Ann., Gen. Prov. § 8-104(a)(7) ("If the governmental entity does not elect to intervene and proceed with the action . . . , the court shall dismiss the action."). On August 4, 2019, Defendants filed a motion to dismiss for failure to state a claim. ECF No. 12. On December 12, 2019, Judge Hollander entered a comprehensive memorandum opinion and order dismissing Dr. Maharaj's claim under the MFCA and dismissing "Counts I, II, and III, to the extent they allege violations of the FCA committed before" September 28, 2012, the beginning of the six-year statute of limitations period. *United States ex rel. Maharaj v. Estate of Zimmerman*, 427 F. Supp. 3d 625, 651 (D. Md. 2019). On January 5, 2020, defendants filed an answer. ECF No. 24.

On January 14, 2020, defendants filed the pending motion for judgment on the pleadings, seeking judgment in their favor on the claims that Judge Hollander did not dismiss and arguing for the first time that the relator failed to plead fraud with particularity, as Rule 9(b) requires. ECF No. 26. Dr. Maharaj filed an opposition on February 14, 2020, ECF No. 35, and defendants filed a reply on February 27, 2020, ECF No. 37.

Four months later, on June 26, 2020, Dr. Maharaj filed the pending motion for leave to file an amended complaint, asserting that the motion was timely by operation of the Court's Standing

Order No. 2020-07, which extended all deadlines by 84 days.[4]  ECF No. 42.  Relator insists that the amendment would not prejudice defendants because it provided the particularity they sought and did not add any claims or parties.  *Id.*

In her proposed amended complaint, Dr. Maharaj alleges the same four counts that she alleged in her original complaint.  *See* Am. Compl. ¶¶ 64, 68, 72, 76).  She asserts essentially the same allegations.   She claims that the defendants submitted documents to the government in which they falsely represented themselves as owners or operators of the disputed land when they knew they were not.  As a result of these false claims or submissions of false records, the government disbursed funds to them for their enrollment in the CREP program.  For purposes of the pending motions, the Court finds it useful to list the specific false claims or records identified in the Amended Complaint:

- On November 27, 2000, Charles Zimmerman completed, signed, and submitted "a Conservation Program Worksheet ('CRP Worksheet')" to "appl[y] to place 37.3 acres of real property into the CREP."  Am Compl. ¶ 19.  He "represent[ed] that he was a producer of all 37.3 acres of real property," even though they included the disputed land.  *Id.*

- On November 27, 2000, Charles and Mildred Zimmerman entered into "a United States Department of Agriculture Conservation Reserve Program Contract ('CRP Contract')" with the Commodity Credit Corporation ("CCC"), which would run from November 27, 2000 until September 30, 2015.  *Id.* ¶ 20.  On the CRP Contract, "Charles and

---

[4] Court Operations under the Exigent Circumstances Created by COVID-19, ECF No. 99 in *In re Standing Orders*, No. 00-mc-308 (D. Md. Apr. 10, 2020).

Mildred Zimmerman represented that Charles was the '100%' owner, rather than an operator, of the 37.3 acres for enrollment." *Id.*

- On July 11, 2007, following Mildred Zimmerman's death on March 17, 2007, Charles Zimmerman revised the CRP Contract to name himself as the sole participant. *Id.* ¶ 25.

- On August 11, 2011, as personal representative of the Estate of Charles Howard Zimmerman, who died earlier that year, Robert Stevens revised the CRP Contract to name the Estate as the participant. *Id.* ¶ 26.

- On January 16, 2013, after the Estate conveyed the property to Robert and George Stevens, they executed a revised CRP Contract, listing themselves as participants. *Id.* ¶ 30.

Dr. Maharaj also alleges generally that false claims and records were submitted to the government annually from 2000 through 2015 in connection with the CRP Contract. Beginning "[o]n November 27, 2000, and upon information and belief annually thereafter, Defendants certified, under oath, that Defendants 'underst[oo]d that an inaccurate certification could result in a payment reduction or loss of program benefits.'" Am. Compl. ¶ 24. Likewise,

> [f]ollowing Mr. Zimmerman's death in 2011, upon information and belief, Robert Clayton Stevens, in his individual capacity and capacity as the Personal Representative of the Estate of Charles Howard Zimmerman Estate, and George C. Stevens, in his individual capacity, submitted documents to the United State[s] government attesting, under oath, that he "underst[oo]d that an inaccurate certification could result in a payment reduction or loss of program benefits."

*Id.* Relator also alleges that, "[u]pon information and belief, Charles Howard Zimmerman and/or Defendants submitted and/or re-submitted sworn applications, documents and/or worksheets to re-enroll the Dispute Property into CREP each and every year from 2001 through 2015." *Id.* ¶ 31. Dr. Maharaj alleges that, in 2013, 2014, and 2015, Robert and George Stevens "unlawfully

received and kept annual payments and benefits from the United States and/or the State of Maryland." *Id.* ¶ 50.

On July 8, 2020, after relator's motion for leave to amend the complaint was filed, the Court held a status call with counsel. During the call, defendants stated that they would be filing an opposition to the motion for leave to amend and asked that the arguments in their pending motion for judgment on the pleadings apply to the amended complaint if it were accepted. In their view, the pleading lacks sufficiently specific allegations of a false claim made after September 28, 2012. Defense counsel acknowledged that the motion for judgment on the pleadings essentially was based on the relator's alleged failure to state a claim within the limitations period, rather than a failure to plead fraud with particularity.

In their opposition, defendants argue that even as amended, Dr. Maharaj's pleading would be subject to dismissal for failure to plead fraud in the particularity and failure to state a claim that is not barred by the statute of limitations. They noted that the proposed amended complaint still includes the previously dismissed MFCA claim and discusses alleged conduct outside the statute of limitations period.

Both parties cite non-substantive grounds for denying the opposing party's motion. Dr. Maharaj challenges the timing and tactics of defendants' motion. Relator's Opp'n 4–6; Relator's Reply re Mot. to Am. 21–27 (discussing defendants' motion for judgment). Defendants argue that Dr. Maharaj misleadingly informed the Court that they would not consent to her amendment when she failed to provide them with a redlined copy to make an informed decision. Defs.' Opp'n 1–4. They insist that her failure to provide a redlined copy violated Local Rule 103.6(d) in spirit, if not in letter. *Id.* With regard to the motion for judgment on the pleadings, it certainly would have been more efficient for defendants to have presented their pending arguments in their motion to

dismiss. Similarly, in seeking leave to amend, the better approach for the relator would have been to share a redlined copy of the amended complaint with defendants before seeking leave to file it, although this requirement is not in the Local Rules. Nonetheless, both motions are properly before the Court. *See* Fed. R. Civ. P. 12(c), (h)(2)(B); Loc. R. 103.6(d). The Court will not deny either motion on these procedural grounds but rather will turn to the merits of these interrelated motions.

## II.     Standards of Review

### A.  *Motion for Judgment on the Pleadings*

Under Rule 12(c) of the Federal Rules of Civil Procedure, "a party may move for judgment on the pleadings" after the pleadings are closed, but early enough not to delay trial. Fed. R. Civ. P. 12(c). "A Rule 12(c) motion for failure to state a claim is 'assessed under the same standard that applies to a Rule 12(b)(6) motion.'" *Al-Sabah v. World Bus. Lenders, LLC*, No. SAG-18-2958, 2020 WL 3868989, at *9 (D. Md. July 9, 2020) (quoting *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009)); *see also Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Rule 12(b)(6) and 12(c) motions challenge "the legal sufficiency of a complaint" on the grounds that, "even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law 'to state a claim upon which relief can be granted." *Thomas-Lawson v. Koons Ford of Balt., Inc.*, No. SAG-19-3031, 2020 WL 1675990, at *2 (D. Md. Apr. 6, 2020) (citing *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017)); *see* Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) or Rule 12(c) motion, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))); *see Al-Sabah*, 2020 WL 3868989, at *9. Typically, a plaintiff can accomplish this through "a short and plain statement of the claim showing that the pleader is entitled to relief." *Cooke v. Caliber*

*Home Loans, Inc.*, No. 18-3701-PWG, 2020 WL 1434105, at *3 (D. Md. Mar. 24, 2020) (quoting Fed. R. Civ. P. 8(a)(2)).   In ruling on a Rule 12(c) motion, the Court must accept as true all of the plaintiff's allegations and must construe factual allegations in the light most favorable to the plaintiff.  *See Pulte Home Corp. v. Montgomery Cty., Md.*, 909 F.3d 685, 691 (4th Cir. 2018).

When, as here, a complaint alleges fraud, it also must satisfy the heightened pleading standard of Rule 9(b), which requires that "'the circumstances constituting fraud' be stated 'with particularity.'"   *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 186 (D. Md. 2019) (quoting Fed. R. Civ. P. 9(b)).   In *Fadlalla*, another recent *qui tam* action, this Court stated:

> Relators "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.   Even under this heightened standard, "[a] court should hesitate to dismiss a complaint . . . if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."

*Id.* (quoting *Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 432 (4th Cir. 2015)) (some citations omitted); *see also United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (stating that FCA claims must allege "the 'who, what, when, where, and how' of the alleged fraud" (quoting *United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 384 (5th Cir. 2003)).

### B.  Motion to Amend

Pursuant to Rule 15, courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).   "A motion to amend should only be denied when 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'"   *ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917

F.3d 206, 217–18 (4th Cir. 2019) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th

Cir. 1999)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

**III.    Discussion**

In Dr. Maharaj's amended complaint, she includes additional factual allegations in support

of her claims.  She does not add new causes of action or additional defendants.  These amendments

will not cause prejudice to defendants.  Although discovery is set to close on August 17, 2020, that

date can be extended, and a trial date has not been set.  There is no evidence of bad faith.  Thus,

the only basis for denying Dr. Maharaj's motion to amend would be futility.  *See Foman*, 371 U.S.

at 182; *ACA Fin. Guar. Corp.*, 917 F.3d at 217–18.  In this regard, although defendants write

broadly about failing to plead fraud with particularity, it is clear from the July 8 status call and the

tenor of defendants' briefing that their primary contention is that relator has not sufficiently alleged

an FCA claim within the statute of limitations period.

*A.  Counts I and II*

Dr. Maharaj alleges that defendants knowingly presented or caused the presentment of a

false or fraudulent claim for payment to the United States in violation of 31 U.S.C. § 3729(a)(1)(A)

(Count I) and knowingly made or used a false or fraudulent record "to get the false or fraudulent

claims paid or approved by the Government" in violation of 31 U.S.C. § 3729(a)(1)(B) (Count II).

Am. Compl. ¶¶ 64, 68.  To state a claim under either FCA provision, Dr. Maharaj

> must allege sufficient facts by which the Court could plausibly infer that
> (1) Defendants made false statements or engaged in a fraudulent course of conduct;
> (2) with the requisite knowledge; (3) the statements or conduct was material; and
> (4) caused the government to pay out money or to forfeit monies due on a "claim."

*Fadlalla*, 402 F. Supp. 3d at 186 (citing *United States ex rel. Rostholder v. Omnicare, Inc.*, 745

F.3d 694, 700 (4th Cir. 2014) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d

776, 788 (4th Cir. 1999))).

The first element requires false statements or fraudulent conduct, which can be pleaded with the particularity required by Rule 9(b) in one of two ways. *Id.* at 189 (citing *United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 197 (4th Cir. 2018)). "Relators may aver 'with particularity that specific false claims actually were presented to the government for payment,' or plead 'a pattern of conduct' that would have necessarily led to the submission of false claims." *Id.* (quoting *Grant*, 912 F.3d at 197).

The second element requires that the false statements or fraudulent conduct must be made or done knowingly, as "[s]cienter is a 'rigorous' and key element of an FCA claim." *United States ex rel. Complin v. N. Carolina Baptist Hosp.*, No. 19-1243, 2020 WL 3167634, at *3 (4th Cir. June 15, 2020). The relator must allege that "a fraud was committed with 'actual knowledge, deliberate ignorance, or reckless disregard of [ ] truth or falsity.'" *Id.* (quoting *Rostholder v. Omnicare, Inc.*, 745 F.3d 694, 700, 703 (4th Cir. 2014)). A relator cannot make "a general and conclusory allegation" that the defendants presented false claims knowingly, but rather must allege "'specific facts that support an inference' of scienter." *Id.* (quoting *Wilson*, 525 F.3d at 379). The statute imposes the scienter requirement so as "not [to] punish honest mistakes or incorrect claims submitted through negligence.'" *Id.* (quoting *United States ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 380 (4th Cir. 2015)).

The third element requires that "the alleged false or fraudulent statements . . . be material to the Government's decision to award the contract." *Fadlalla*, 402 F. Supp. 3d at 188. To fulfill this requirement, the statements must have "a natural tendency to influence agency action or [be] capable of influencing agency action." *Id.* (quoting *Harrison*, 176 F.3d at 785).

The fourth element "'requires the presence of a claim,'" as the false statement or conduct must have "caused the government to pay out money . . . due on a 'claim.'"  *Fadlalla*, 402 F. Supp. 3d at 186, 189 (quoting *Harrison*, 176 F.3d at 785).  In *Harrison*, the Fourth Circuit observed

> The Supreme Court has cautioned that the False Claims Act was not designed to punish every type of fraud committed upon the government. *See United States v. McNinch,* 356 U.S. 595, 599, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958). In order for a false statement to be actionable under the False Claims Act it must constitute a "false or fraudulent claim." "[T]he statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'" *United States v. Rivera,* 55 F.3d 703, 709 (1st Cir.1995). Therefore, a central question in False Claims Act cases is whether the defendant ever presented a "false or fraudulent claim" to the government.

176 F.3d at 785.  Significantly, the phrase "'false or fraudulent claim' has become a term of art," and "[t]he False Claims Act 'reaches beyond "claims" which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money.'  Thus, any time a false statement is made in a transaction involving a call on the U.S. fisc, False Claims Act liability may attach."  *Id.* at 788 (quoting *United States v. Neifert–White Co.,* 390 U.S. 228, 233 (1968)).  It reasoned that "[t]he phrase 'false or fraudulent claim' in the False Claims Act should be construed broadly.  The False Claims Act is 'intended to reach all types of fraud, without qualification, that might result in financial loss to the Government . . . . [T]he Court has consistently refused to accept a rigid, restrictive reading . . . .'"  *Id.* (quoting *Neifert–White Co.*, 390 U.S. at 232).

On the issues presented in the pending motions, *Fadlalla* is instructive.  In that *qui tam* case, the defendants moved to dismiss FCA counts for failure to state a claim under Rule 12(b)(6) and failure to plead fraud with particularity.  The relators alleged the same statutory violations that Dr. Maharaj alleges.  The defendants insisted that the relators "must plead the specifics of the submission of any false claim or risk dismissal."  402 F. Supp. 3d at 189.  The Court observed that "the Defendants set the pleading bar too high."  *Id.*  The Court denied the motion to dismiss, in part, reasoning:

> The Amended Complaint, read as a whole and most favorably to Relators, easily allows the inference that GLS would have submitted false claims to the Government. First and most obviously, the Amended Complaint sets out the sham subcontracting arrangement designed to ensure that GLS was awarded Contracts 1 and 2. Second, the Amended Complaint details the ongoing nature of the contractual relationship between GLS and the Government to provide linguistic services in exchange for getting paid on the Contracts. The Court may plausibly infer, therefore, that GLS had to continue making false claims to receive payment.

*Id.*

Another case that provides guidance on the issues presented here is *United States ex rel. Dugan v. ADT Sec. Servs., Inc.*, No. DKC-03-3485, 2009 WL 3232080 (D. Md. Sept. 29, 2009). In *Dugan*, the Court applied the six-year statute of limitations in § 3731(b) to relator's claims, just as Judge Hollander did in this case.   "Applying the six-year statute of limitations," Judge Chasanow found that "any claims that rely solely on claims submitted to or paid by the government before December 8, 1997 are barred."   *Id.* at *4.   The Court then analyzed the allegations in the complaint to determine whether the relator alleged an FCA violation after December 8, 1997.   In count one, which asserted an FCA claim based on a fraud-in-the-inducement theory, the relator alleged that the defendant "fraudulently induced the Government to enter into a contract in 1996 in that Defendant knowingly failed to disclose a material change in its pricing methodology despite an obligation to do so."   *Id.*   The Court found that this claim was time-barred because "[a]ll of the conduct on which this allegation [wa]s based occurred before December 8, 1997."   *Id.*   In the same count, the relator also alleged that the defendant's later "claims . . . submitted to [the government] for payment or approval of purchases made pursuant to [the 1996] contract" were "false and fraudulent within the meaning of the False Claims Act."   *Id.*   The Court found those allegations insufficient as well because the relator did not "identify any specific false claim that Defendant made to the government for payment or any specific payment from the government to Defendant for a false claim" after December 8, 1997.   *Id.*

The Court's analysis of the second FCA count was similar.  *Id.* at *5.  In that count, the relator alleged that the defendants "continued to violate its duty to disclose all relevant details of its commercial systems pricing methodology each time it submitted updates" to the government. *Id.*  The Court found that "[a]ll of the[] events occurred before the December 8, 1997 statute of limitations cut-off date, and therefore, as with count one, claims based on that theory are time-barred."  *Id.*  The relator also alleged that, "at least since 1997, ADT has routinely overcharged Government purchasers using the 1996 [contract] when the claim included charges for labor." These additional allegations were "not specified and [were] barred to the extent the claims were submitted or paid before December 8, 1997, and maybe thereafter unless there is an independent basis for a[n] FCA claim."  *Id.*  Insofar as the relator included "fairly detailed" allegations of overcharges for labor after December 8, 1997, the Court concluded that she had identified bids for work, which were "not representations of the actual cost of labor to Defendant" and therefore did not amount to fraudulent misrepresentations.  *Id.* at *10, *15.  Because the relator did not allege a violation of § 3729(a)(1) after the statute of limitations cut-off date, the FCA counts under § 3729(a)(1) were dismissed.

In this case, Judge Hollander ruled that the FCA counts were dismissed "to the extent they allege violations of the FCA committed before" September 28, 2012.  Judge Hollander's memorandum opinion does not address whether any post-September 28, 2012 FCA violations were alleged.  Now that a proposed amended complaint has been filed, the Court will examine it to determine the extent to which it alleges an FCA violation after the statute of limitations cut-off date.

### 1.  Robert and George Stevens

The Court will first address whether relator has alleged a viable FCA violation against Robert and George Stevens.  In her amended complaint, Dr. Maharaj discusses the lengthy history between herself, Mr. Zimmerman, Robert and George Stevens, and other former or neighboring property owners.  Am. Compl. ¶¶ 15–18, 35–48.  She claims that, as of 2011, if not earlier, Robert and George Stevens were on notice that they were not owners of the disputed land and that they, in fact, knew they were not owners of the disputed land.  *See*, *e.g.*, *id.* ¶¶ 27, 30, 35–36, 42–48, 51.

Dr. Maharaj identifies only one allegedly false claim or record presented to the government by Robert and George Stevens during the limitations period:  a January 16, 2013, revised CRP Contract that they signed.  *Id.* ¶ 30 & Ex. I (Jan. 16, 2013 CRP Contract, ECF No. 1-9).  The four other false claims or records that relator identifies by specific date were submitted to the government by others before September 28, 2012 and cannot form the basis for an alleged FCA violation.  Am. Compl. ¶¶ 19, 20, 25, 26.  In the January 16, 2013 revised CRP Contract, Robert and George Stevens allegedly identified themselves as "participants" in the program, when they knew that they were not participants.  Am. Compl. ¶ 30.  Dr. Maharaj claims:

> Robert Stevens []or George Stevens presented or caused to be presented, made, used, or caused to be made or used, false and/or fraudulent representations, including those contained in Exhibit I [the January 16, 2013 revision to the CRP Contract], to the United States government. The United States government relied upon such false and/or fraudulent representations to enroll and/or continue to enroll the Disputed Land into CREP. Defendants knew of these false and fraudulent statements, failed to correct them, and perpetuated them. Instead of correcting these false and fraudulent statements, Defendants continued to derive and keep unlawful payments and/or benefits from the CREP on the Disputed Land.

*Id.*

Defendants' primary challenge to this alleged false statement is that the representations in the revised CRP Contract were neither false nor fraudulent because Robert and George Stevens identified themselves only as participants, without making any representation of ownership.  Defs.'

Reply 13.  Defendants insist that "participant" is an appropriate, not fraudulent, way to describe themselves, noting that "Relator offers no definition of that term."  Defs.' Opp'n 17; *see also id.* at 19.  They also contend that the document "makes no representation as to the ownership of any land."  *Id.* at 21.  This argument is unpersuasive.

The January 16, 2013 revised CRP Contract states: "THIS CONTRACT is entered into between the Commodity Credit Corporation . . . and the undersigned owners, operators, or tenants (who may be referred to as 'the Participant'.)"  Jan. 16, 2013 CRP Contract, ECF No. 1-9.  Robert and George Stevens allegedly signed this document, and therefore, they are the "undersigned."  By signing the document, one could conclude that each signatory held himself out as an "owner, operator, or tenant," which, according to the document, were synonymous with "Participant."  *See id.*  The significance of this alleged misrepresentation was observed by Judge Hollander, who summarized Dr. Maharaj's pleadings:

> In order to enter into a CREP Contract, the participant "must be an owner or operator of the eligible land," but [according to the Complaint] Mr. Zimmerman was neither the owner nor the operator of the Disputed Parcel. [Compl. ¶ 22] (citing 7 C.F.R. § 1410.5). He did not hold the title to the Disputed Parcel. *Id.* ¶ 17. And, he was not an operator of the Disputed Parcel, because he ceased farming the prior year, and he did not submit any paperwork averring to be an operator of the Land. *Id.* ¶ 23.

*Maharaj*, 427 F. Supp. 3d at 635.  Similar to Mr. Zimmerman before them, Robert and George Stevens allegedly misrepresented themselves as owners or operators of the disputed land in a contract submitted to the government in order to receive government funds.  The revised contract continued to enroll the same 37.3 acres that Mr. Zimmerman enrolled in the program, and it obligated the government to pay $141.92 per acre.  Am. Compl. ¶ 19 & Ex. C, ECF No. 1-3.  Under the revised contract, Robert and George Stevens received $5,294 annually for their participation in the program.  *See id.*  Viewing the allegations in the light most favorable to Dr. Maharaj, as is required at this stage of the proceedings, the Court finds that relator has sufficiently alleged "a

false or fraudulent claim for payment" knowingly presented by, or "a false record or statement material to a false or fraudulent claim" knowingly made or used by, George and Robert Stevens within the statute of limitations period. *See* 31 U.S.C. § 3729(a)(1)(A)–(B).

In addition to the January 16, 2013 revision to the CRP Contract, Dr. Maharaj has alleged generally that George and Robert Stevens presented false claims or used false records to obtain funds when they resubmitted sworn applications and worksheets in 2013, 2014, and 2015, as a result of which they received payments from the government to which they were not entitled. Am. Compl. ¶¶ 11, 30, 31, 33, 50 & Ex. I; Relator's Opp'n 9. Although relator does not identify the dates of those alleged false statements or the specific documents that were submitted, the Court may, as in *Fadlalla*, "plausibly infer . . . that [George and Robert Stevens] had to continue making false claims to receive payment." 402 F. Supp. 3d at 189. Thus, Dr. Maharaj has alleged sufficiently that George and Robert Stevens made false or fraudulent statements that were material and "caused the government to pay out money." *See id.* at 186.[5]

Defendants' Rule 9(b) challenges to the amended complaint are unpersuasive. Defendants argue that allegations cannot be made "upon information and belief," as the relator did in her allegation that "[u]pon information and belief, Charles Howard Zimmerman and/or Defendants submitted and/or re-submitted sworn applications, documents and/or worksheets to re-enroll the Dispute Property into CREP each and every year from 2001 through 2015," Am. Compl. ¶ 31. Defs.' Opp'n 9. It is true that this Court has said that it "is not sufficient" for an FCA claim to support "[m]ost of the allegations . . . only on 'information and belief.'" *United States ex rel.*

---

[5] The defendants do not convincingly challenge the sufficiency of the allegations of the scienter and materiality elements of FCA violations. As discussed above, relator has alleged that the defendants knew or should have known that the representation that they owned all of the enrolled land was false, and that the false statement caused the government to pay them more money under the contract than they were entitled to receive.

*Moore v. Cardinal Financial Co., L.P.*, No. CCB-12-1824, 2017 WL 1165952, at *13 (D. Md. Mar. 28, 2017). But here, Dr. Maharaj does not qualify most of her allegations as based only on information and belief. Moreover, this Court has found that "[w]hile the clear intent of Rule 9(b) is to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed,' . . . 'information and belief' allegations [can] meet Rule 9(b)" where "[t]hese allegations serve the role of 'connect[ing] the dots' between the many facts based on Relators' personal experience and the facts where they understandably lack access to necessary information." *See Fadlalla*, 402 F. Supp. 3d at 187 n.14 (quoting *Harrison*, 176 F.3d at 789; *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 199 (4th Cir. 2018)). Such is the case here. Given the additional, detailed factual allegations provided in the Amended Complaint, Dr. Maharaj has alleged fraud with sufficient specificity to survive defendants' motion. *See id.*

Defendants' argument that, under Rule 9(b), the relator must differentiate the allegations against each defendant also is unpersuasive. Defs.' Mem. 4; Defs.' Opp'n 8. Certainly, "when a relator raises allegations of fraud against multiple defendants, 'the complaint must apprise each defendant of the specific nature of his or her participation in the fraud.'" *United States ex rel. Brooks v. Lockheed Martin Corp.*, 423 F. Supp. 2d 522, 526 (D. Md. 2006) (quoting *In re Newbridge Networks Sec. Litig.*, 767 F. Supp. 275, 282 (D.D.C.1991)), *aff'd in part, dismissed in part,* 237 F. App'x 802 (4th Cir. 2007); *see also Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 250 (D. Md. 2000) ("A complaint fails to meet the particularity requirements of Rule 9(b) when a plaintiff asserts merely conclusory allegations of fraud against multiple defendants without identifying each individual defendant's participation in the alleged fraud.").

Here, the relator's allegations are differentiated where defendants made separate statements or engaged in different acts but, where their statements are the same, such as on the revised CRP

Contract, there is no need to differentiate. These are not conclusory allegations but rather particular allegations that apply equally to two defendants. It is true that relator, at times, generally alleges that the defendants, without differentiating which one, submitted documents or took actions over a 15-year period. But relator lays out a detailed timeline of events, including which defendant became a participant in the CRP program and when, that helps differentiate the allegations as to each defendant. The allegations in the amended complaint are sufficient to put each defendant on notice of his alleged conduct and statements. Accordingly, the failure to differentiate the allegations against each defendant is not a basis for dismissal.

When the amended complaint is read in its entirety, and the factual allegations are construed in the light most favorable to the relator, the Court finds that Dr. Maharaj has sufficiently alleged, and with particularity, that George and Robert Stevens "made false statements or engaged in a fraudulent course of conduct" and did so with actual knowledge or, at a minimum, reckless disregard for the truth. *See Fadlalla*, 402 F. Supp. 3d at 186. Dr. Maharaj's factual allegations in support of Counts I and II are pleaded with particularity, and she has sufficiently stated a claim in Counts I and II as to George and Robert Stevens. Accordingly, amendment would not be futile, and the relator should have the opportunity to amend. *See Foman*, 371 U.S. at 182; *ACA Fin. Guar. Corp.*, 917 F.3d at 217–18.

### 2. *The Estate*

The Court next addresses whether the amended complaint alleges an FCA violation against the Estate of Charles Zimmerman that is not time-barred. Defendants argue that the amended complaint does not allege the presentment of a false claim or the use or making of a false record by the Estate after September 28, 2012. Dr. Maharaj argues that she properly pled her FCA claims

against all defendants, including the Estate, when the allegations "are viewed through the appropriate holistic, 'new[s] story' lens." *See* Relator's Opp'n 8–9 (citing Compl. ¶¶ 11, 31, 33).

In the amended complaint, Dr. Maharaj alleges two false claims or records that were submitted by the Estate to the government as part of the CREP program, both of which are time-barred. The first is a June 15, 2011 application to the U.S. Department of Agriculture for payments due to a deceased person, namely Charles Zimmerman, and the second is an August 1, 2011 revised CRP Contract in which the Estate is listed as the participant in the CREP program. Am. Compl. ¶ 26 (referencing Exhibit F, ECF No. 1-6, the June 15, 2011 application); *id.* ¶ 49 (referencing Exhibit L, ECF No. 1-12, the August 2, 2011 CRP contract). Both of these documents were submitted and signed by Robert Stevens, acting as personal representative for the Estate. Neither of them can form the basis for an FCA violation against the Estate because they were submitted before September 28, 2012.

It is true, as defendants argue, that Dr. Maharaj has not identified a specific false claim or false record presented or made by the Estate after September 28, 2012. This defect might be fatal to her motion to amend with respect to the Estate if the amended complaint did not contain other allegations that save it from dismissal at this early stage in the proceedings. According to the amended complaint, the Estate was enrolled as a participant in the CREP program until January 16, 2013, when Robert and George Stevens submitted the revised CRP contract naming themselves as participants. *Id.* ¶¶ 26–30. They substituted themselves as participants because the Estate, as of January 1, 2013, had conveyed all of its ownership interest in the enrolled property, including the disputed land, to them. Am. Compl. ¶¶ 28–29. Thus, there was a period of time, albeit brief, within the limitations period—from September 28, 2012 to January 16, 2013—in which the Estate was named as the participant on the CRP contract.

During that three-and-a-half-month period, Dr. Maharaj has not identified by date a specific false claim presented or false document submitted by the Estate to the government. However, she has alleged that the defendants, including the Estate, "submitted and/or re-submitted sworn applications, documents and/or worksheets to re-enroll the Dispute Property into the CREP each and every year from 2001 through 2015." *Id.* ¶ 31. Dr. Maharaj also alleges "upon information and belief that Defendants filed sworn certificates annually, beginning on November 27, 2000, representing that Defendants 'underst[oo]d that an inaccurate certification could result in a payment reduction or loss of program benefits.'" *Id.* ¶ 24. Beginning in 2011, Robert Stevens allegedly filed these certificates as the personal representative of the Estate. *Id.* She also has alleged that the Estate received fraudulently obtained payments from the government within the limitations period. *Id.* ¶¶ 26, 33. Indeed, the CRP Contract with the Estate states that the Estate will receive annual payments of $5,294. *Id.* ¶ 49 (referencing Exhibit L, ECF No. 1-12, the August 2, 2011 CRP contract). Thus, even though relator has not identified a false claim or record, by name and date, that was submitted by the Estate after September 28, 2012, she has alleged that the Estate was a participant in the program during the limitations period, that the ongoing nature of the 15-year contractual relationship between the participant and the government required the regular submission of documents to comply with, and continue enrollment in, the program, and that pursuant to the contract, the Estate received annual payments.

The amended complaint, when read as a whole and most favorably to relator, allows the inference that the Estate submitted a false claim or false record to the government after September 28, 2012, when it was a participant in the program, and before January 16, 2013, when it was removed as a participant. *Fadalla*, 402 F. Supp. 3d at 189. Under the applicable standard of review, Dr. Maharaj has sufficiently alleged FCA violations against the Estate to withstand

defendants' motion for judgment on the pleadings.  *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 378 (4th Cir. 2008); *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 788 (4th Cir. 1999).  Her proposed amendments are not futile and her request to amend is granted.  *See ACA Fin. Guar. Corp. v. City of Buena Vista, Virginia*, 917 F.3d 206, 217–18 (4th Cir. 2019).[6]

### B.  Count III

The defendants have moved for judgment on the pleadings as to Count III, which alleges a "reverse false claim."  A "reverse false claim" is a claim that defendants "knowingly made false statements to avoid having to pay an amount owed to the Government, in violation of 31 U.S.C. § 3729(a)(1)(G)."  *See Fadlalla*, 402 F. Supp. 3d at 179; Am. Compl. ¶ 72.  Subsection (G), unlike subsections (A) and (B), which impose liability for fraudulently obtaining government funds, "imposes liability on anyone who makes a false statement 'material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.'"  *Fadlalla*, 402 F. Supp. 3d at 190 (quoting 31 U.S.C. § 3729(a)(1)(G)).  Significantly, the obligation to pay the government must be "a specific duty outlined in a contract or statute, not '[c]ontingent obligation[] . . . that will arise only after the exercise of discretion by

---

[6] To be sure, the majority of the allegedly false claims and records were submitted before September 28, 2012 and are barred by the statute of limitations.  To prove the FCA violations alleged in Counts I and II against each defendant, relator must establish that each defendant, including the Estate, presented a false claim or made or used a false record within the limitations period.  *See* 31 U.S.C. § 3731(b); *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, ___ U.S. ___, 139 S. Ct. 1507, 1510 (2019).  By allowing Dr. Maharaj to amend her complaint, the Court makes no comment on whether she will be able to prove these alleged FCA violations.  The Court notes that, even if relator is successful on all of her remaining claims at trial, the amount of government funds disbursed to the defendants for the six acres of disputed land does not appear to be significant.  The actual relief that Dr. Maharaj apparently seeks is a declaration that she owns the disputed land.  That issue, of course, cannot and will not be decided in this litigation.

government actors.'" *Id.* at 191 (quoting *United States ex rel. Landis v. Tailwind Sports Corp.*, 160 F. Supp. 3d 253, 268 (D.D.C. 2016)).

Dr. Maharaj argues that her "reverse false claim" count should survive a motion for judgment on the pleadings.  She claims that "the CREP contract(s) at issue obligated Charles Zimmerman and Defendants to pay or repay the Government in the event of an erroneous representation, scheme and/or device," such that "Defendants have a contractual duty, requirement and/or obligation to repay the government principal, interest and liquidated damages for monies purloined by fraud." Relator's Reply re Mot. to Am. 31, 34.  According to relator, this contractual obligation gives rise to a "reverse false claim" under the False Claims Act.  The Court disagrees.

In *Fadlalla*, the Court considered whether the relator pled a "reverse false claim."  The relator alleged, "without elaboration, that 'false claims were made to avoid paying back to the U.S. penalties under [defendant's] contracts with the Government.'"  *Fadlalla*, 402 F. Supp. 3d at 191. The Court dismissed the claim because the relator "failed to plead an 'obligation' owed to the Government," as required by the statute.  The Court reasoned that "the theory of liability rests on the proposition that had the Government known of Defendants' FCA violations, the Defendants would be required to reimburse the Government for monies disbursed under the contract." *Id.*  The Court concluded that "'the Government's ability to pursue reimbursement for overpayments or fraudulently induced payments does not constitute an "obligation,' [under § 3729(a)(1)(G)]" and "[r]elators cannot properly allege a reverse false claim that is premised on the same conduct as [the] [r]elators' claims under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B)." *Id.* (quoting *Landis*, 160 F. Supp. 3d at 269).  The same is true here.

In support of her claim in Count III, Dr. Maharaj alleges:

Defendants knowingly caused to be made or used false records or false statements to conceal, avoid, or decrease an obligation to pay or transmit money or property

to the United States and knowingly concealed and improperly avoided or decreased an obligation to pay or transmit money or property to the Government.

Am. Compl. ¶¶ 71–72; *see* Relator's Reply re Mot. to Am. 31–34. The false records or false statements that form the basis for Count III are the same ones alleged in Counts I and II. Relator does not plead an obligation owed to the government. Nor does she allege an avoidance of payment obligations. As in *Fadlalla*, Dr. Maharaj has alleged that the same false statements defendants made to obtain government funds also were made to avoid paying the government back after obtaining those funds. For the same reasons the "reverse false claim" failed in *Fadlalla*, it fails here. *See Fadlalla*, 402 F. Supp. 3d at 190–91.

Count III is dismissed with prejudice because Dr. Maharaj sought the opportunity to amend in response to defendants' identification of perceived pleading deficiencies and still failed to state a claim.[7] *See Brantley v. Epic Games, Inc.*, No. PWG-19-594, --- F. Supp. 3d ----, 2020 WL 2794016, at *12 (D. Md. May 29, 2020) (dismissing claims with prejudice where "Plaintiffs were given an opportunity to amend and did so after Defendants previously raised these deficiencies"); *see also Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013) ("Where no opportunity is given to amend the complaint, the dismissal should generally be without prejudice.").

---

[7] Relator was on notice of the legal deficiency of Count III as of February 27, 2020, when the defendants filed their reply in support of their motion for judgment on the pleadings. Defendants challenged Count III in that filing on the same grounds they asserted in their opposition to the motion for leave to amend. *See* Defs.' Reply re Mot. for Judgment on Pleadings 19 (arguing that relator's "claims in Count III under §3729(a)(1)(G) fail" because they are based "on the same conduct upon which she bases her claims under §3729(a)(1)(A) & (B)," and "'Relators cannot properly allege a reverse false claim that is premised on the same conduct as Relators' claims under 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B)'" (quoting *Fadlalla*, 402 F. Supp. 3d at 191); Defs.' Opp'n 6 (same).

C.  *Count IV*

The proposed amended complaint includes the MFCA claim (Count IV) that Judge Hollander dismissed.  Dr. Maharaj states that she "re-pled Count IV out of concern for prejudice or preclusion that might result if she did not," and agrees that Count IV need not be included "[i]n light of Defendants' agreement [in their opposition] that Dr. Maharaj's rights would not be precluded or prejudiced by failing to re-plead Count IV."  Relator's Reply re Mot. to Am. 34. Therefore, the Court will strike Count IV from the amended complaint.  *See* Md. Code Ann., Gen. Prov. § 8-104(a)(7) (requiring dismissal of MFCA claim when state declines to intervene).

**IV.    Conclusion**

Dr. Maharaj's motion for leave to file an amended complaint, ECF No. 42, is granted as to Counts I and II against all defendants to the extent it alleges violations of the FCA committed after September 28, 2012.  Allegations of conduct that occurred before September 28, 2012 may be considered, however, to provide context for alleged violations that occurred after that date.  The motion for leave to amend is denied as to Count III and denied insofar as relator seeks to refile Count IV.  Defendants' motion for judgment on the pleadings, ECF No. 26, is granted as to Count III and otherwise denied.  Should the parties need additional time for discovery beyond the current August 17, 2020 deadline, they shall submit a joint proposed amended scheduling order to the Court within two weeks.

A separate order will issue.


Date: <u>August 5, 2020</u>                                        <u>        /S/        </u>

                                                                Deborah L. Boardman
                                                                United States Magistrate Judge